DANIEL J. COYNE *et al.*

*v.*

J. DIXON AVERY *et al.*

*Opinion filed February 20, 1901.*

CONTRACTS—*when rule that an agreement to ship from specified place at certain time is a warranty does not apply.* An agreement to ship at a certain time from a specified place is generally a warranty that the shipment will be made at such time; but this rule cannot be applied to an executory contract for the sale of five cars of eggs to be delivered in Chicago, without any agreement as to time of delivery further than that the cars be shipped from points in the States named, on certain days of the following week.

*Coyne* v. *Avery,* 91 Ill. App. 347, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. S. C. STOUGH, Judge, presiding.

YOUNG, MAKEEL, BRADLEY & FRANK, for appellants.

HERBERT SYDNEY DUNCOMBE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On February 25, 1898, Mr. Lightbody, the agent of J. Dixon Avery & Sons, the appellees, applied to Daniel J. Coyne, of the firm of Coyne Bros., the appellants, to sell appellants five cars of eggs, to be shipped from the States of Kansas and Nebraska the following week and to be delivered in Chicago. A price of twelve cents per dozen was agreed upon, and there was some talk about the time of shipment, and Lightbody was to go and telegraph about the eggs. He sent several telegrams to Haskell & Bosworth, Beatrice, Nebraska, and J. Dixon Avery, who was then in Topeka, Kansas, to arrange for the shipment of the eggs. The next day Lightbody informed Daniel J. Coyne that he had the eggs to be shipped and gave him the following memorandum of sale:

"4 CLARK, COR. S. WATER ST.,
*"Sold to Coyne Bros.:*          CHICAGO, *Feb. 26, 1898.*

"Five cars of eggs, one to be shipped from the country Tuesday, the balance Wednesday and Thursday, at 12c delivered Chicago.                    J. DIXON AVERY & SONS."

On the following Tuesday, March 1, appellees caused to be shipped, consigned to themselves at Chicago, one car of eggs from Harrington, Kansas, and two cars from Beatrice, Nebraska. On Thursday, March 3, they caused to be shipped, consigned in like manner, one car from Wichita, Kansas, and two cars from Beatrice. On Friday, March 4, they caused to be shipped in like manner one car from Beatrice. There were shipped in all from the different points, three cars on Tuesday, three on Thursday and one on Friday. After the contract was made the market price of eggs in Chicago kept dropping, and on Friday, March 4, before any of the eggs arrived,

appellants applied to the agent, Lightbody, to re-sell the eggs to appellees. After sending more telegrams it was finally agreed that appellees would give appellants ten and one-quarter cents per dozen for the eggs, and a cash settlement was made on that basis. Lightbody then gave appellants the following bill for the difference:

"*To Coyne Bros., Chicago:*          "*March 4, 1898.*

"To difference between buying and selling price of five cars of eggs, 60,000 dozen, at 1¾ cents, $1050.00."

On the following Monday, Lightbody went to appellants' office for a check for said amount, which they refused to pay, and this suit was brought to recover it. Appellants did not deny making either of the agreements, and their only defense was that the eggs were not shipped from Kansas and Nebraska at the time agreed upon. Daniel J. Coyne testified that the eggs were to be shipped, one car on Tuesday, three on Wednesday and one on Thursday, and that when the memorandum of sale was handed to him he was busy and did not notice that it failed to specify how many cars should be shipped on Wednesday. Lightbody testified that the contract was as expressed in the written memorandum, but, in either view of the contract, the shipments were not made at the time agreed upon, as no eggs were shipped on Wednesday. Appellants contended that the time of shipment was a material part of the contract, and the failure to ship each car at the precise time agreed upon gave them the right to rescind the whole contract; that their agreement to re-sell was made in ignorance of the fact that the cars were not shipped at the time agreed upon, and that the failure of appellees, at the time of the re-sale, to inform them of that fact amounted either to a mistake of fact or a fraud, and therefore the second agreement was not binding. The jury returned a verdict for $1115.91. Appellees remitted $65.91, which was included as interest, and there was a judgment for $1050, which the Appellate Court affirmed.

The first thing occurring on the trial of which complaint is made is, that the court rejected evidence offered by defendants to show that plaintiffs had contracted to sell two cars of eggs to other parties. There were seven cars shipped, of which defendants were to have five, and what they offered to prove was, that the plaintiffs had agreed to sell two to other persons. It is argued that this evidence would show that the plaintiffs would not have the power of disposal of the eggs when they arrived. It had been stipulated by the parties that the cars had been shipped consigned to the plaintiffs at Chicago. They would be absolutely within plaintiffs' control, so that they might have delivered them to the defendants, and the offered evidence did not tend to establish the contrary. There was no attempt to show a present and executed sale of any of the eggs to some other person, but to prove contracts like the one made with defendants. The contract with defendants created an obligation on the part of plaintiffs to deliver five cars of eggs in Chicago, but it was a mere executory contract for a sale of eggs at that place. The contract does not manifest any intent of the plaintiffs to part with their title to the eggs before delivery, nor any intent of the defendants to become the owners of them before that time. When the cars shipped on Tuesday should arrive, plaintiffs would have full power to deliver them to defendants if they wanted to, and the court did not err in excluding the evidence.

It is also alleged as error that the court allowed the plaintiffs' attorney to argue questions of law to the jury. In arguing a case to the jury an attorney must necessarily make a statement of what he claims the law to be, as a basis for his argument on the facts, but he must not encroach in any way upon the province of the court to finally state the law to the jury. We find nothing unfair or improper in the statement in this case. It would have been more proper to have stated the nature of the de-

fense instead of reading the special pleas of defendants to the jury, but we cannot see that any harm resulted to the defendants from permitting the pleas to be read.

Taking all the instructions given to the jury together, they amount, in substance, to a statement of these rules: That if the agreement to re-sell was made under the belief that the eggs had been shipped according to the original contract, but, as a matter of fact, they had not been so shipped, and this was unknown to both parties, it constituted a mistake of fact and the defendants would not be liable; that if the eggs were not in fact shipped according to the terms of the contract, and defendants were not aware of that fact when they made the second agreement but plaintiffs were aware of such fact and failed to disclose it, plaintiffs could not recover; that if the eggs were shipped from the country so that they could be delivered to the defendants in Chicago on the days when they would have been delivered if they had been shipped on the days when plaintiffs agreed to ship them, it was immaterial that part of them were shipped on a day prior to such day; that if plaintiffs caused to be shipped from the States of Kansas and Nebraska three cars on Tuesday, three on Thursday and one on Friday, consigned to themselves at Chicago, such shipments would be a compliance, so far as time was concerned, with an agreement to ship one car on Tuesday and the balance Wednesday and Thursday. The court also gave instructions on the subject of fraud, to which we see no objection. There was no evidence whatever of any fraudulent statement or concealment, and the only evidence was, that neither party knew, at the time of the contract for re-sale, when the cars were in fact shipped. The defendants made no inquiry on the subject and were very anxious to sell the eggs on the falling market.

The contract was purely executory for the sale of five cars of eggs to be delivered in Chicago, and no time was specified for such delivery. The intention of the parties

was that the delivery should be when the cars arrived. If there were no stipulation bearing on the question of the time of delivery the law would imply that it should be within a reasonable time. The agreement of the parties, whatever it was, with regard to the days of shipment, had no relation to their rights except as fixing a probable time for arrival. Where there is a specified time and place of shipment it is generally a warranty or a condition precedent, for the non-performance of which a party may repudiate the contract; but in this case the eggs were to be shipped from some point or points in the States of Kansas or Nebraska, and the time of shipment in such a case would only give a very indefinite and general idea of the time of arrival. An agreement to ship at a certain time from a specified place is an absolute contract that the shipment will be made at the time; but we do not see how the rule can be applied to a contract like this, where a shipment from Wichita or Harrington, Kansas, or Beatrice, Nebraska, or any point in either State, would be a compliance with the contract. There would necessarily be a difference of days in the time of arrival, depending upon the point of shipment. Again, the agreement for a re-sale was made eight days after the first contract, and defendants made no inquiry as to when the cars were shipped, where they were or when they would arrive, and did not regard that question as of any importance to them. The eggs had been shipped and were on the way when the re-sale was agreed upon. When the contract for re-sale was entered into it became a matter of perfect indifference to defendants when they would arrive or be delivered. They afterward arrived, and there was no evidence that the time of arrival was not as early as defendants could have reasonably expected under the terms of the contract as they claim it was. Certainly, cars of eggs from Beatrice, Nebraska, would arrive at Chicago much sooner than cars shipped from some remote point in that State or Kansas from

which plaintiffs might have shipped under the contract. The time of delivery was the only thing material to the defendants. They suffered no damage whatever, and, as applicable to the facts of this case and the uncontradicted evidence, we do not consider the instructions erroneous.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*