428

Robert Blaine Bryant, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 33,080.

Opinion filed April 17, 1929.

FRED H. MONTGOMERY and VERNON W. FOSTER, for appellant; EDWARD C. CRAIG, of counsel.

JOSEPH D. RYAN, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

The plaintiff Robert Blaine Bryant, brought his action for personal injuries against the defendant Illinois Central Railroad Company, a corporation, in the superior court of Cook county. A trial was had resulting in a verdict for $35,000 in favor of the plaintiff and against the defendant, upon which judgment was entered and an appeal taken to this court.

The declaration filed in the cause consisted of three counts predicated upon the Federal Employers' Liability Act. At the close of all the evidence, on motion

of the defendant, the court directed a verdict for the defendant as to the second count of the declaration, leaving the first and third for their consideration. As to the first and third counts the court refused to direct a verdict, and it is urged, among other grounds for reversal, that in this the court committed error.

The first count charges that on the 6th day of April, 1926, the defendant was a common carrier operating various lines of steam railroads and was, at the time of the accident, engaged in interstate commerce and subject to a certain act of Congress known as the Federal Employers' Liability Act; charges further that on the day in question plaintiff was employed as a fireman on a certain locomotive engine which at the time was engaged in interstate commerce and that the work of firing or coaling the said engine was accomplished by means of a certain steam power driven stoker, consisting of divers gears, valves, etc., which was customarily in charge of the plaintiff and operated by him in the course of his employment; charges further that on the day in question the said stoker had become inoperative and the engine was brought to a stop at or near a certain inspection pit at a roundhouse used by the defendant in its interstate commerce aforesaid, for the purpose of examining the said stoker in order to determine the cause of its failure to operate; that while the said engine was stopped and said stoker was at rest, the plaintiff, in the course of his employment, placed his hand in a certain opening in which one of the aforesaid propellers was situated and that while he was then and there endeavoring to remove a certain obstruction, or piece of iron, that was caught in said propeller aforesaid and while he was in an obviously dangerous and exposed position, a certain other servant of the defendant who was, then and there, assisting the plaintiff and co-operating with him in the work, carelessly and negligently started said stoker in opera-

tion and plaintiff's hand and arm were caught and drawn into the propeller and crushed and he thereby suffered the loss of said hand and arm; charges further that he suffered other divers injuries as the result of said accident. Count three is very similar and the objections raised to the ruling of the court are the same as to both counts.

It is insisted on behalf of the defendant that the evidence tended to show that the plaintiff had placed his hand in the propeller in order to ascertain the size of the piece of iron which was interfering with the work of the propeller in order that he might tell from the investigation whether it was sufficient to stop the stoker, whereas the declaration charged that he had placed his hand in the propeller for the purpose of endeavoring to remove a certain obstruction or piece of iron which was caught in said apparatus.

The gravamen of the action, as charged in the declaration, was the negligence of the fellow servant in starting the propeller while the plaintiff's hand was in this piece of machinery, and while the plaintiff was engaged in the course of his employment. If the plaintiff had his arm in this position while engaged in the service of the defendant, and in the course of his employment, we cannot see that it would constitute a material variance as to whether the purpose was to ascertain the cause of the failure of the propeller to operate, or to remove an obstruction which was causing it to fail to operate.

The declaration charges the defendant with being a common carrier, engaged in interstate commerce at the time of the accident; that the plaintiff was employed by the defendant and at the time of the accident was engaged in the course of his employment; that while so employed he was in a position of danger and was injured by reason of the negligence of a fellow servant co-operating with him in the work; that

the defendant was liable for the negligence of the fellow servant because of the Federal Employers' Liability Act. Moreover, it appears that the cause was tried on the theory that both plaintiff and the traveling engineer Buckles were endeavoring to ascertain the cause of the trouble. Upon the motion of the defendant to direct a verdict on the ground of variance at the end of all the evidence, plaintiff made his motion to amend the declaration to conform to the evidence, by adding to each count on the face thereof certain words which would include the "examination" of the said obstruction, as well as the "removal" of the obstruction.

While we are of the opinion that the variance, if any, was immaterial and had no bearing on the merits of the proceeding, nevertheless, the trial court might well have allowed the amendment in order to obviate any question concerning the question of variance. In the view we take of the matter there was not such a material variance as would authorize the trial court to have directed a verdict and there was no error in its refusal so to do.

Our attention is directed to the case of Buckley v. Mandel Bros., 333 Ill. 368. The court in its opinion in that case said:

"When the variance between the declaration and proof is insisted on at the trial, so that the plaintiff has the opportunity to amend his declaration, it is error for the court to refuse to direct a verdict if he fails or refuses to amend the declaration. Wabash Western Railway Co. v. Friedman, 146 Ill. 583; Lake Shore and Michigan Southern Railway Co. v. Ward, 135 id. 511; Chicago Union Traction Co. v. Hampe, 228 id. 346; Republic Iron Co. v. Lee, 227 id. 246; Wabash Railroad Co. v. Billings, 212 id. 37."

From this reasoning it necessarily follows that if there was a variance the court should have permitted an amendment, as prayed for, and his refusal so to do

cannot be charged against the plaintiff. The plaintiff had placed his arm in the propeller while employed in and about the work of the defendant and, in the view we take of the case, it is immaterial whether it was for the purpose of removing an obstruction or attempting to ascertain what, if any, the obstruction was.

As stated by Mr. Justice Holmes in the case of *Braithwaite v. Hall*, 168 Mass. 38:

"The meaning of the declaration is plain and sufficient. Nowadays we do not require pleadings to be guarded against all the possible distortions of perverse ingenuity."

It is also insisted on behalf of the defendant that the testimony offered on behalf of the plaintiff did not tend to show that the automatic stoker was caused to start by reason of the action of Buckles, the traveling engineer of the defendant. But, from the evidence, it appears that there were facts from which the jury could draw the conclusion that the propeller was put in motion by his act. The automatic stoker was a piece of machinery used to convey coal, by means of a propeller or screw, from the tender of the engine to the fire box. The valves which operated this stoker were on the left hand side of the boiler head and controlled the steam furnished by the locomotive, used for that purpose. There was a conveyor extending from the fire box of the engine to the coal tender underneath the floor of the engine deck. Inside this conveyor or trough there was a spiral screw which revolved and conveyed the coal from the tender to the locomotive fire box. The stoker was operated by a separate engine and by means of two valves located on the side of the engine boiler.

There is evidence tending to show that at the time of the accident the plaintiff was in the tender with his arm in the propeller or screw and that Buckles was in the cab of the engine. It is insisted on behalf of the defendant that a cracked valve set the stoker engine in

operation and by cracked valve is not meant a mechanical defect, but a slight opening which caused sufficient steam to issue from the engine to cause the propeller to revolve. On the other hand it is insisted by the plaintiff that the propeller was caused to revolve by Buckles operating the valves in question. This was a question for the jury and decided by them in favor of the plaintiff and there is evidence in the record which, standing alone, would be sufficient for the jury upon which to predicate such a verdict.

It is insisted that the court erred in permitting it to come to the attention of the jury that the plaintiff was a married man, but the records show that this fact was first elicited on cross-examination of the plaintiff when, in answer to a question, he stated that while in the hospital he was not permitted to see visitors, not even his family. No objection was made to this by defendant nor was a motion made to strike it out. It was again brought to the attention of the jury by reason of a statement of Miss Tobias, an employee of the defendant, who took down in shorthand certain questions and answers propounded to the plaintiff by agents of the defendant prior to the trial of the cause. Part of this statement was introduced in evidence by the defendant and plaintiff's counsel proceeded to introduce the balance of the statement and in this statement the fact of his being married appeared. When part of the written statement was offered, the remainder became competent when offered by the plaintiff. *Morris v. Jamieson,* 205 Ill. 87. The fact that the evidence was first elicited by the defendant's counsel on cross-examination and again appeared in a statement presented by him, obviously relieves the plaintiff of any blame in having it called to the attention of the jury.

It is insisted on behalf of the defendant that, at the time of the accident, plaintiff was not engaged in interstate commerce. The train upon which plaintiff

was employed as a fireman was known as the Floridan, running between Chicago and Florida, and, on the day in question was northbound. The engine upon which plaintiff was employed as a fireman had been coupled to the train at Centralia and was twenty minutes late in reaching Champaign where it was uncoupled and another engine attached for the purpose of completing the journey. When the train arrived in Champaign, a man by the name of Buckles, an official of the defendant known as a traveling engineer, boarded the engine and discussed with the plaintiff the question of the failure of the propeller to operate. They rode upon the engine to the roundhouse pit and just as the engine was going on to the pit, there is testimony to the effect that Buckles said to Bryant, "I want you to show me what is wrong with the stoker," and that Bryant replied, "All right, I will show you." It was while the engine was upon the roundhouse pit that the accident occurred, and while Buckles and the plaintiff were engaged in attempting to ascertain what was the cause of the trouble with the propeller.

It is unquestioned that the defendant in operating the train in question from Florida to Chicago was engaged in interstate commerce in its operation, nor is it questioned but that plaintiff while acting as a fireman for the defendant company from Centralia to Champaign was employed in an interstate operation of the defendant, but it is insisted that after the engine was uncoupled at Champaign and transferred to the roundhouse pit, that the character of this employment ceased and that the work performed by the plaintiff at that place with reference to the examination of the propeller, was not such work or employment as pertained to an operation in interstate commerce, and, consequently, plaintiff was not entitled to the benefit of the Federal Employers' Liability Act. This question is ordinarily one of fact. Whether the defendant and an injured employee were engaged in interstate

commerce at the time, is a question for the jury. *Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Bolle v. Chicago & N. W. Ry. Co.,* 324 Ill. 479.

In the case of *Bolle v. Chicago & N. W. Ry. Co., supra,* the court in its opinion says:

"Whether or not at the time of the accident plaintiff was employed by defendant in interstate commerce was a controverted question of fact upon which plaintiff had a constitutional right to a trial by jury. This question of fact was the main issue in the case. Whenever an issue is made in a case and evidence must be introduced to maintain the issue, controverted questions of fact are involved which include not only evidentiary facts but ultimate facts, even though there be no conflict in the testimony. (*Chicago Title* and *Trust Co. v. Ward,* 319 Ill. 201; *Frank v. Hoskins Co.,* 323 id. 46.) The evidence in the case was not such that all reasonable minds must necessarily agree that at the time of the accident plaintiff's employment was not such as to bring him within the provisions of the Federal Employers' Liability Act."

Defendant cites *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177. The facts in this case show that the interstate movement of the cars had long since ended and that the cars which the plaintiff in that case was engaged in switching had been in storage on the tracks for a week or more prior to the accident. It was evident in that case that the interstate movement had long since ceased and that plaintiff's duty in that case was an intrastate employment.

The facts in the case of *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473, show that the train in question on which the plaintiff in that suit was employed, was engaged in a purely intrastate movement.

The Supreme Court of the United States in the case of *North Carolina R. Co. v. Zachary,* 232 U. S. 248, had occasion to pass upon a somewhat similar question

as that involved in this case. From the facts in that case it appears that the plaintiff had been inspecting, oiling and firing his engine preparatory to an interstate commerce trip; that he had left the engine and was proceeding to his boarding house, but was still upon the premises of the defendant. The Supreme Court in its opinion says:

"Again, it is said that because deceased had left his engine and was going to his boarding house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that the deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine. See *Missouri, K. & T. Ry. Co. v. United States,* 231 U. S. 112, 119."

In the case at bar there is evidence tending to show that plaintiff, while examining the propeller of the engine on which he was employed as a fireman, was still on duty as his obligation to the company required his returning the engine to the roundhouse. Moreover, his then employment was for the purpose of preparing the engine for future service upon the road and, from the evidence, it appears that he, himself, had a regular run from Centralia to Champaign, so that it is inferable that the work which he was doing was preparatory to a future employment of the engine in an interstate commerce operation.

Under the authorities, we are of the opinion that the

court properly left this question to the jury, particularly as there was evidence on which reasonable minds could differ. Consequently, it became a question of fact for their consideration as to whether or not plaintiff at the time of the injury was engaged in an employment of the defendant that was in furtherance of interstate commerce.

The doctrine of assumed risk is not in the case, nor is the rule in regard to the negligence of a fellow servant involved, because of the fact that these questions are controlled by the provision of the Federal Employers' Liability Act.

Plaintiff at the time of the accident was 39 years of age and earning approximately $2,400 a year. He had been employed by the defendant for sixteen years and it does not appear that he was familiar with any other calling or occupation. By reason of the injuries it became necessary to amputate his arm and it necessarily follows that the physical and mental suffering was extreme. While the verdict is large, we cannot say that it is excessive. We have examined the instructions objected to and find there was no error on the part of the trial court either in giving or refusing the same.

For the reasons stated in this opinion the judgment of the superior court is affirmed.

*Judgment affirmed.*

HOLDOM, P. J., and RYNER, J., concur.