ELOISE MARTIN, Plaintiff-Appellee, *v.* ALLSTATE INSURANCE COMPANY, Defendant-Appellant.

First District (5th Division)    No. 79-1602

Opinion filed January 23, 1981.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, John L. Kirkland, and Jill B. Berkeley, of counsel), for appellant.

Larry D. Drury and Gary L. Blank, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal from the judgment entered on a jury verdict in favor of plaintiff in the amount of $150,000, defendant contends that the trial court erred (1) in refusing to permit its witnesses to explain the import of a notation in the insurance policy after plaintiff had been permitted to give her explanation of it; (2) in refusing to permit defense counsel to comment during closing argument on anticipated jury instructions; (3) in giving certain instructions as to damages; and (4) in failing to grant judgment to defendant notwithstanding the verdict. Defendant also maintains that the verdict was against the manifest weight of the evidence and was excessive.

In her amended complaint, plaintiff alleged in count I, sounding in fraud, that her husband, William Martin, purchased automobile insurance from defendant; that he informed defendant's agent the insurance was to cover plaintiff and him not only on their car but also on nonowned autos used by either of them; that defendant's agent fraudulently misrepresented this coverage would be issued; and that subsequent to the death of her husband, defendant fraudulently misrepresented that she would receive all death benefits provided in the policy but none have been paid. In count II, sounding in a theory of unjust enrichment, she alleged payment of the policy premium and asserted that defendant was unjustly enriched because of its fraudulent misrepresentations as to coverage. In count III, she alleged generally that through breaches of its duty to her with respect to coverage and payment of death benefits, defendant improperly interfered with her property rights.

The record discloses from plaintiff's testimony that her husband was employed by Marshall White Ford as a used car manager and in that capacity had the use of its automobiles. He also bought and sold cars at auctions for Futrell Auto Sales and, in connection therewith, would drive its cars to and from the auctions. Needing insurance for his wife when she used those vehicles, he applied for coverage with defendant for their car and nonowned cars used by either of them. It appears, however, that he signed a statement excluding coverage with respect to nonowned automobiles. Additionally, plaintiff testified that she and her husband, separately

and sometimes together, had conversations with Picur (defendant's agent who sold the policy) in which the latter said that "they were covered"; that "we were both on any car"; that they were covered on any car that they drove; that they "had continuing income, hospitalization, sickness and 'full coverage on anything.' " [1]

The record reflects that the policy in question provided coverage for their personal auto and that premiums had been paid for bodily injury and property damage, basic personal injury, excess personal injury, uninsured motorists coverage, and collision and comprehensive coverages. Plaintiff stated, however, that she did not understand what any of the coverages meant; that she had not read the policy before the death of her husband but had told her niece and a Mrs. Futrell (apparently the owner of Futrell Auto Sales) that they had "full coverage"; that following the death by asphyxiation of her husband while sitting in a Marshall White auto, she applied for personal injury protection (PIP) benefits but had received nothing; and that since her husband's death, she had sought medical attention and had been hospitalized for physical and mental conditions.

Agent Picur testified that plaintiff's husband applied for coverage on a personally owned vehicle; that after they discussed the various types of coverage available, he requested coverage for liability, property damage, uninsured motorists, medical, full comprehensive, and no-fault personal injury (which is called PIP); that when Martin said he had the use of nonowned automobiles, Picur asked him to fill out and sign a nonowned automobile questionnaire form, indicating he declined such coverage and desired protection only for his personal auto; that Martin filled out and signed the questionnaire; that he (Picur) never informed Martin that he was covered for the use of nonowned vehicles; that Martin never requested a change in coverage for nonowned autos; and that the policy provided coverage on plaintiff's own car for basic and excess personal injury protection.

OPINION

Defendant initially contends that numerous trial errors require a new trial. First, he asserts that the trial court improperly refused defense testimony intended to explain the significance of a notation on the declarations page of the insurance policy after plaintiff was allowed to give her interpretation. On that page was the following notation: "EXCEPTIONS, IF ANY, TO DECLARATIONS 5-13: #6—No, has non-owned auto use." Plaintiff was questioned about the declarations page as follows:

---

[1] Some of her testimony concerning conversations with her husband and other persons was admitted over objections for the purpose of showing that certain statements were made, but not to prove the truth of those statements.

"Q. Does the page 1 of the supplemental page indicate whether or not there is coverage for a non-owned auto?

A. Yes.

Q. Does it not in fact say #6 has non-owned auto use?

A. Yes."

Defendant thereafter sought to introduce the testimony of two witnesses to explain the notation, arguing unsuccessfully that it should have been permitted to present the explanation of its insurance agent (Picur) who sold the policy and of its underwriter (Snoply) to refute plaintiff's testimony concerning that notation. Defendant then made no offer of proof that those witnesses would testify in substance that after an insured indicates he has nonowned automobile use, it is standard procedure to request that he fill out and sign the nonowned auto questionnaire form; that plaintiff's husband executed such a questionnaire, indicating a waiver of any nonowned auto coverage and that when there is such a waiver the underwriting department makes a notation on the declarations page of the policy issued, as it did here, reflecting that fact.

In closing argument, plaintiff's counsel emphasized her interpretation of the notation as follows:

"Now I want you to look at this policy when you go into the jury room; and right there on the bottom, number six: 'has non-auto [*sic*] use.' What is the reasonable person to expect? Draw on your own everyday experience in life, bring that into the jury room when you review these documents."

■■ The applicable rule was stated in *People v. Lewis* (1977), 52 Ill. App. 3d 477, 485, 367 N.E.2d 710, 715, as follows:

"If one party opens up an issue and the other party will be prejudiced unless he can introduce contradictory or explanatory evidence, then the prejudiced party will be permitted to introduce such evidence, even though it might otherwise be improper. (31A C.J.S. *Evidence* §190 (1964); *Herget National Bank v. Johnson*, 21 Ill. App. 3d 1024, 316 N.E.2d 191; *Werdell v. Turzynski*, 128 Ill. App. 2d 139, 262 N.E.2d 833. See also 18 Ill. L. & Prac. *Evidence* §44 (1956).)"

■■ We think it clear that the trial court's refusal to permit defendant to introduce the testimony of Picur and Snoply regarding the notation on the declarations page was error. The jury was allowed to hear plaintiff's interpretation of this notation, which was crucial on the question of coverage for nonowned auto use, but was not permitted to balance that testimony against defendant's proffered explanation. The error was intensified by remarks of plaintiff's counsel in closing argument concerning plaintiff's testimony on that point. In our view, the situation presented here is analogous to those cases in which it was held that the trial court

properly permitted one party to introduce the remainder of a document after allowing the opposing party to present a portion thereof. (See *Phillips v. Town of Scales Mound* (1902), 195 Ill. 353, 63 N.E. 180; *Bryant v. Illinois Central R.R. Co.* (1929), 252 Ill. App. 428; also see *Reilly Tar & Chemical Corp. v. Lewis* (1942), 326 Ill. App. 84, 61 N.E.2d 290.) In both situations, the jury might and most likely would be unfairly influenced by the lack of a full view of the evidence. Indeed, as the record indicates here, the testimony of Picur and Snoply, had it been admitted, would have presented the jury with an interpretation contrary to that of plaintiff; namely, that William Martin had waived coverage for use of nonowned autos. Thus, as where the trial court must admit the relevant remainder of a document once it admits a part thereof, so also in the case before us it should have permitted defendant to present its explanation of the notation and, because it was crucial on the question of whether there was nonowned auto coverage, we consider the rejection of this testimony to be prejudicial error.

Defendant also asserts error in the refusal of the trial court to permit defense counsel, in closing argument, to state her belief as to the content of some of the court's instructions. In this regard, the following colloquy took place:

"MS. BERKELEY [defense counsel]: * * * I believe that the Judge will give you certain instructions, several instructions; but there are a few that are very important and that I ask you and I urge you to listen to it very carefully. Those instructions set out what the six elements of fraud are for the plaintiff to prove; and I believe that the Judge will tell you that each one of these six elements must be proved and that it must be proved by a standard of clear and convincing evidence.

MR. DURY [plaintiff's counsel]: I'm going to object to these remarks.

THE COURT: That's by the Court.

MS. BERKELEY: In the instructions that I believe the Court will give you, there are certain tests you will have to know whether or not the plaintiff has proved her case. I believe that certain of them will be directed to what the defendant's conduct is and others will be directed towards what Mrs. Martin is—

MR. DRURY: With all due respect to Counsel, I object.

MS. BERKELEY: Judge, I—

MR. DRURY: Counsel's expectations of what the court is going to instruct the jury is beyond the scope of closing argument.

MS. BERKELEY: Judge, I would disagree. If you'd like—

THE COURT: No, I'll allow you to continue.

MS. BERKELEY: The plaintiff has to show that there was a

statement made of material fact, not an opinion, but a material fact. The plaintiff must also show—

THE COURT: Now wait, now I will stop you. You are now invading the province of the Court.

MS. BERKELEY: Judge, I believe I'm allowed to comment on the law.

THE COURT: You may not. The law comes from the bench."

■■ In closing argument, counsel for the parties are permitted to state their belief as to what the court will instruct as to the law. (*Coyne v. Avery* (1901), 189 Ill. 378, 59 N.E. 788.) Such argument must, however, be developed in accordance with the instructions the court determined would be given in the conference on jury instructions (Ill. Rev. Stat. 1979, ch. 110, par. 67(3); also see Ill. Ann. Stat., ch. 110, par. 67, *Joint Committee Comments*, at 298-99 (Smith-Hurd 1968)), and unless counsel's remarks are misleading, he has the right to express his belief concerning the content of anticipated instructions during closing argument. (*People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124).

■■ In the case before us, counsel was interrupted before she could complete her explanation as to what she believed the law to be, and there is no indication in the record that those remarks would not have been consistent with the instructions which the court had already determined would be given. Its ruling thus prevented counsel from placing the facts of the case within an appropriate framework of the law and thereby denied her the right to present the case from the perspective of defendant. It was error to so restrict defense counsel's argument, and we believe that defendant was prejudiced thereby. See *People ex rel. Paul v. Harvey*.

Defendant further contends that the trial court erred in giving the following jury instructions:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damage proved by the evidence to have resulted from the wrongful conduct of the defendant.

The nature, extent and duration of the injury.

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expenses of necessary medical care, treatment and services received.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

These are Illinois Pattern Jury Instructions, Civil, Nos. 30.01, 30.02, 30.05, 30.06 (2d ed. 1971), but defendant argues they were improperly

given here because the measure of damages defined therein is not applicable in an action based on fraud. It further maintains that plaintiff failed to establish that the purportedly fraudulent conduct was the proximate cause of plaintiff's alleged injury and damage.

■■ The measure of damages in an action for fraud is determined from the loss to the plaintiff rather than from the gain to the defendant. (*Forrester v. State Bank* (1977), 52 Ill. App. 3d 34, 363 N.E.2d 904; *Fairfield Savings & Loan Association v. Kroll* (1969), 106 Ill. App. 2d 296, 246 N.E.2d 327.) The rationale which underlies this so-called benefit of the bargain rule is that the defrauded party is entitled to be placed in the same financial position as he would have been in had the misrepresentations in fact been true. (*Schwitters v. Springer* (1908), 236 Ill. 271, 86 N.E. 102; *Ginsburg v. Bartlett* (1931), 262 Ill. App. 14.) As stated in 19 L. & Prac. *Fraud* §53 (1956):

> "Generally, the measure of damages for fraud is such an amount as will compensate the plaintiff for the loss occasioned by fraud, or, as it has been expressed, the amount which plaintiff is actually out of pocket by reason of the transaction."

However, damages may not be predicated on mere speculation (*DeKoven Drug v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378) and must be proximate, and not a remote, consequence of the fraud (19 Ill. L. & Prac. *Fraud* §54 (1956)).

It is apparent that the trial court failed to instruct the jury as to the correct measure of damages for fraud, and as a result, the jury's award, based as it was on improper criteria, did not accurately reflect the manner in which the law seeks to provide compensation for damages in actions of this type. Thus, the trial court's failure to properly instruct the jury in the case before us must be regarded as reversible error.

Moreover, we agree with defendant that even if those elements of damages were recoverable in a fraud action, it would have been improper to give the instruction because plaintiff did not establish, as required by the instruction, that her alleged physical condition, medical care, and expenses "resulted from the wrongful conduct of defendant." Plaintiff testified that "subsequent to her husband's death" in 1973, she was under the doctor's care and went to Mayo Clinic twice because she was losing weight; that in 1974, she was hospitalized for double pneumonia; that in 1978, she had an operation to remove growths for her throat; that her medical expenses were "about $15,000" of which $9,000 was attributable to her throat operation; and that most of her medical expenses had been paid. Thus, plaintiff testified only as to her physical condition "subsequent to her husband's death" and she has referred us to no evidence in the record, and we have found none, which causally connects her stated

physical condition to any conduct of defendant. It is axiomatic that an instruction should not be given where there is no evidence to support it. See *Down v. Comstock* (1925), 318 Ill. 445, 149 N.E. 507; *Biggerstaff v. New York, Chicago & St. Louis R. Co.* (1957), 13 Ill. App. 2d 85, 141 N.E.2d 72.

In summary, we find that the errors set forth above were of such prejudicial nature as to make a new trial imperative. (See *People ex rel. Paul v. Harvey.*) In view of this finding, it is unnecessary to consider whether or not the verdict was against the manifest weight of the evidence.

Finally, we consider defendant's contention of error in the denial of its motion for judgment notwithstanding the verdict. In this regard, we note that the supreme court, in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14, stated the applicable rule to be that judgment *n.o.v.* should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Here, while it is true that as a consequence of certain of the errors discussed above the jury was limited in its consideration of this case, we nevertheless must consider this contention on the record presented and, viewing the evidence in its aspect most favorable to plaintiff, we are unable to say that it so overwhelmingly favors defendant that no contrary verdict would ever stand. Accordingly, we reject the contention of error in the refusal of the trial court to enter judgment *n.o.v.*

For the reasons stated, the judgment is reversed and remanded for a new trial.

Reversed and remanded for a new trial.

MEJDA and WILSON, JJ., concur.