COMMERCIAL NATIONAL BANK OF PEORIA, Plaintiff-Appellee, v. FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellant.

Third District   No. 3—84—0454

Opinion filed April 3, 1985.

Tim Swain, of Swain, Johnson & Gard, of Peoria, for appellant.

David J. Dubicki and Timothy J. Howard, both of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Commercial National Bank of Peoria (Commercial) recovered a judgment of $105,652.57 plus costs against the Federal Deposit Insurance Corporation (FDIC) based on loans fraudulently induced by Farmers State Bank of Lewistown (Farmers), for whom the FDIC is acting as receiver. The FDIC appeals and we affirm.

At all times relevant to the instant case, Commercial and Farmers had a longstanding correspondent banking relationship. As one service to its "country bank," Commercial would provide participation and overline loans to customers of Farmers who sought credit in excess of Farmers' legal lending limits. Commercial's officer in charge of correspondent banking was Clifford Michael. Michael had been doing business for over a decade with Donald Thomas, who at the time of the events in 1981 was president of Farmers. Both Michael and Thomas testified to having an excellent business relationship. Whenever a customer of Farmers needed the services of Commercial, Thomas would call upon Michael. They would share the relevant financial data, and a decision would be made based upon that data.

On October 5, 1981, Thomas called Michael to inform him that Tingley Products (Tingley), a small manufacturing corporation owned by Vincent and Rebecca Augenstein, needed $90,000 to complete a contract. Thomas represented that the loan would be paid when the receivables generated by the contract were collected. Michael requested financial information. Thomas informed him that he had financial statements of both Tingley and the Augensteins dated September 30. The statements reflected a net worth of $15,000 for Tingley and $487,000 for the Augensteins personally. Michael had previously made a $60,000 loan to Tingley which had been repaid, albeit late. Michael agreed to make the loan on an unsecured basis, backed by the personal guarantees of the Augensteins. The maker of the note was listed as "Vincent Augenstein d/b/a Tingley Products." The note was signed "Vincent Augenstein, Pres."

What Thomas did not tell Michael was that Tingley had laid off all its employees in July. The contract that Thomas represented did not exist at all, but was merely a vague and uncertain prospect which never materialized. He also conveniently ignored an $88,000 overdraft

from Tingley to Farmers. The financial statements submitted to Michael (prepared by Augenstein on a quarterly basis for Thomas) mentioned neither the overdraft nor a $56,000 loan from Augenstein to Tingley.

The evidence strongly suggests that Thomas was for a long time aware of Tingley's overdraft situation. It was the largest overdraft outstanding to Farmers. Augenstein testified that Thomas called him in to discuss the overdraft situation. Augenstein never suggested a loan to cover the overdraft. Thomas, however, had other ideas. Exhibits offered by Commercial show that the proceeds of the loan went directly into Tingley's account to offset the overdraft. Further exhibits show that Tingley had already been in debt up to or over Farmers' lending limits, not even considering the overdraft.

In the first week of November, Michael learned that Thomas had resigned from Farmers. In reviewing loans to customers of Farmers, Michael saw that the $90,000 had been applied to cover the overdraft. He promptly informed Farmers of Commercial's claim against it. He also extracted a substantial payment from Augenstein, leaving a principal balance of $74,472.47, although the note was not due until April 1982. On January 11, 1982, a new note was given to Commercial by Tingley, representing the corporation as the maker and granting Commercial security interests in most of Tingley's assets. Tingley and the Augensteins were both placed in involuntary bankruptcy by the FDIC. Judgment was taken on the January note and guarantees by Commercial. No portion of the judgment has been satisfied.

Commercial sued the FDIC on a single count of fraud. The jury returned a verdict of $77,860.96. Attached to the verdict form was a sheet indicating that the verdict was arrived at by taking the principal amount on January 11 and adding interest thereto up to April 12, the due date of the note. Commercial's post-trial motion seeking additional interest up until the date of the judgment was granted, resulting in the judgment referred to above.

■■ Defendant argues that its motion for a directed verdict should have been granted or, in the alternative, that it should be granted a new trial. Its principal contention is that plaintiff did not prove the elements of a cause of action for fraud.

The elements of fraud can be found in *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599. Plaintiff must prove that defendant:

(1) Made a false statement of a material fact.
(2) Knew or believed the statement to be false.
(3) Intended to induce action in reliance thereon.

(4) Actually induced the desired action.

(5) Caused damage to the party due to his reliance.

In addition, plaintiff must prove that his reliance was justified under the circumstances.

Despite defendant's protestations to the contrary, the evidence and all reasonable inferences therefrom suggest that plaintiff made out a *prima facie* case of fraud. The statement that Tingley had a contract for which short-term financing was needed was decidedly false. The financial statements submitted were also false statements of fact in that critical financial information that Thomas was aware of was omitted. In fact, the record reveals that Thomas had another financial statement from the Augensteins showing a personal net worth of $319,000. It is a fair inference that Thomas communicated false information to Michael by submitting the statement showing a net worth of $487,000. Knowledge of falsity is easily inferred from the surrounding circumstances. Augenstein and Thomas both testified that Thomas followed Tingley's progress closely in 1981. He certainly must have known that the Tingley employees were laid off and that no actual contract existed. His testimony to the contrary is unconvincing at best. Furthermore, Thomas' possession of a contrary financial statement suggests that he knew he was giving Michael bogus data.

The intent to induce action is obvious from the facts. Thomas concocted the contract story because he had to create a credit basis for Tingley Products. Armed with a plausible story, Thomas went to Michael seeking to induce a loan to clear up the troublesome overdraft. Corroborative of this scenario is a letter to Augenstein from Thomas which in essence informed Augenstein that Tingley would have to sign a note for the balance if the overdraft were not paid within 10 days. Since Farmers had already reached its lending limit with Tingley, the overdraft had to be cleared up or Thomas may have been held personally liable for an unauthorized loan. The action taken by Commercial in reliance on the statements is not in serious dispute.

■ The damage element is seriously disputed by defendant, but its arguments are misguided. The court took judicial note of the judgments arising from the notes. The loss caused by the extension of credit to one incapable of repaying is clearly an injury which is the proper subject of a fraud action. *Horne v. Walton* (1866), 117 Ill. 141.

■ Defendant argues that damages have not been proved with sufficient certainty. Specifically, the failure to introduce evidence of the value of security taken for the January 11 note and of the value of claims in bankruptcy is cited to show that the true net loss to Commercial was not proved. However, these are questions of mitigation of

plaintiff's damages. Mitigation of damages is an affirmative defense which must be pleaded and proved. (*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.) The only pleading which arguably raised this defense was stricken on plaintiff's motion. The striking of this defense was in no way preserved.

■ Defendant further argues that Commercial was not damaged by Thomas' misrepresentation because the note induced by fraud (the October note), was satisfied by the taking of the January note, which was taken with full knowledge of Tingley's true condition. Plaintiff argues that the intention of the parties was that the January note was given in renewal and not in payment of the October note.

These positions are academic. Thomas induced Commercial to extend credit to third parties. These third parties did not have the means to pay. The indebtedness to Commercial continued regardless of the formalities of the instruments representing the debt. The new note did nothing to dissipate the taint of the original fraud. The proof of damage to Commercial stemming from the fraud was sufficient to support the jury's verdict.

The closer question is whether Commercial proved that its reliance on Thomas' representations was justified under the circumstances. Defendant's position throughout has been that plaintiff, the sophisticated "city bank," entered this transaction with its eyes closed. It had made a loan to Tingley before which had been difficult to collect. Michael had never spoken to Augenstein personally nor had he ever visited Tingley facilities. In fact, Michael had reason to know that Farmers itself was having financial problems. Nonetheless, Commercial made an unsecured loan of $90,000 based solely on Thomas' representations.

■ In sum, defendant accuses Commercial of negligence in making the loan to Tingley. But negligence is not necessarily a good defense here. Rather, all relevant circumstances must be considered in determining whether a party's reliance was justified. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.) Furthermore, it is ineffective to charge a party with negligence when a positive statement of material fact is made with the intention of inducing the party to act in reliance thereon. *Eisenberg v. Goldstein* (1963), 29 Ill. 2d 617, 195 N.E.2d 184.

■ The circumstances surrounding the transaction at issue lead to the conclusion that Commercial's reliance was justified. Particularly telling is the 50 years' relationship between Farmers and Commercial and the 13-year relationship of Michael and Thomas. Thomas knew that Michael trusted his business judgment. Thomas also knew

that Michael would feel no need to investigate his representations independently because of that trust. Most importantly, Thomas knew Michael would accept Thomas' information concerning Tingley because Thomas had made it his business to follow Tingley closely. This combination of disparity of information and misplaced trust created laboratory conditions for lulling Michael into a false sense of security. Such a situation triggers the exception to the general rule that a party is not justified in relying on representations made when ample opportunity exists to ascertain the truth of the representations before acting in reliance thereon (*Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335). Consequently, the element of justified reliance under the circumstances was adequately demonstrated.

■ Defendant submits the court erred in denying its motion *in limine* seeking exclusion of Thomas' conviction of defrauding the United States (18 U.S.C. sec. 371 (1982)). The conviction was admitted on cross-examination for the purpose of generally impeaching Thomas' testimony.

In *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805, our supreme court adopted proposed Rule 609(a) of the Federal Rules of Evidence governing the admissibility of convictions to impeach a nonparty witness in a civil case. (See also *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) In *People v. Stover* (1982), 89 Ill. 2d 189, 432 N.E.2d 262, the court emphasized that it had adopted the proposed version of the Rule and not the version ultimately adopted by Congress. The critical distinction is that in the Federal system, a conviction of a crime involving dishonesty or false statement is admissible regardless of prejudicial effect or probative value. Under Illinois' adoption of the proposed rule, a showing that a conviction's probative value outweighs its prejudicial effect is a prerequisite to the admissibility of any conviction for purposes of impeachment. Defendant contends that the court denied its motion *in limine* without undertaking the aforementioned balancing process.

Even if defendant's assertion is correct, the ruling of the court below must be upheld. There is no record of the motion hearing beyond the court's order reciting that it had heard argument and was fully advised in the premises. The burden of presenting a complete record of the proceedings below to support a claim of error is on the appellant. Given the findings as stated in the order, we must presume that the court properly exercised its discretion in denying the motion. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.

■ Defendant raises several points regarding jury instructions. An objection to the damages instruction concerned the failure to dis-

cuss the possibility of the October note being satisfied by the January note and the lack of an allegation of fraud relative to the January note. In light of our previous discussion of the significance of the different notes, these questions are moot. Additionally, we note that the jury was instructed that if it did not find liability it would have no occasion to consider damages. If the jury accepted defendant's theory that fraud did not induce Commercial's action in taking the January note, it would have held defendant not liable. Thus, any error in the damage instruction would be inconsequential.

A series of non-IPI instructions tendered by defendant was refused by the court. Defendant's No. 16 concerns the meaning of justifiable reliance. The instruction is essentially argumentative in that it condemns "closing one's eyes" to available information, irrespective of whether such inattention was purposefully induced by the other party. Furthermore, the burden of proof instruction already informed the jury that plaintiff had to prove that its reliance was reasonable.

Defendant's No. 17 distinguishes misrepresentation of facts from "mere promise or expression of opinion or intention." This coincides with defendant's position that Thomas did not make false material statements of fact. Our review of the testimony indicates that while this instruction is substantially correct, it is not supported by the evidence. Also, the issues instruction makes it clear that plaintiff had to prove that false statements of fact were made.

Defendant's No. 18 states that damages from an alleged fraud must be a consequence only of the wrong and not from other causes. This is another expression of defendant's view that plaintiff's failure to act properly contributed to its loss. As before, we must reject this statement as an injection of a mitigation of damages defense which was neither pleaded nor proved.

■ Defendant's final assertion of error is the court's addition of interest to comport with the damages instruction given. The proper measure of damages in a fraud action is the loss to plaintiff and not the gain to defendant. (*Martin v. Allstate Insurance Co.* (1981), 92 Ill. App. 3d 829, 416 N.E.2d 347.) In *Horne v. Walton* (1886), 117 Ill. 141, the court held that the measure of damages for a fraudulently induced loan was the sum of money lent plus interest for the time that plaintiff was deprived of possession. In this case, that time would be from the time of the loan until judgment. The jury only awarded interest up until the due date of the note.

Defendant argues that the jury's ignoring of the damages instruction constitutes a compromise verdict on the issue of liability. There is nothing in the record to support such a conclusion. Instead, it is rea-

sonable to conclude that the jury confused the amount of interest that would have been due had the note been timely paid with the amount to which plaintiff was lawfully entitled. Since the awarding of the correct amount of interest involved only a simple use of arithmetic, it was within the court's discretion to do so.

Accordingly, we affirm the judgment of the circuit court of Fulton County.

Affirmed.

BARRY and WOMBACHER, JJ., concur.