714

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS GLASCO, Defendant-Appellant.

First District (3rd Division)   No. 1—89—2123

Opinion filed December 22, 1993.

TULLY, P.J., dissenting.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Veronica X. Calderon, and Karen H. Iwasaki, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Thomas Glasco, was convicted of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1(a)), home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11), armed

violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2), and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4). He was sentenced to 20 years' imprisonment for the attempted murder and home invasion.

On appeal, defendant asserts that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in sustaining a general objection during his closing argument; (3) prosecutorial misconduct during opening and closing argument denied him a fair trial; and (4) the trial court abused its discretion in sentencing him to 20 years' imprisonment. We reverse the conviction and remand the case for a new trial.

At trial, Gerald Phillips, a 14-year-old neighbor of the victim, testified that on August 18, 1986, he was walking home between 10:30 and 11 p.m. As he passed the alley between Center and Wallace Streets in Chicago Heights, he saw two men run out of the alley. They were 13 to 14 feet away and were carrying a 19-inch television set. Phillips did not recognize either of the men.

As Phillips approached his home, he saw a nearby house on fire. A passerby went into the burning house and pulled the victim from the fire.

Chicago Heights police officer Henry Rice testified that he investigated the fire. The victim told him that three men entered his home. He knew one of the men by name and recognized another from the neighborhood.

The victim testified that he was home alone at 11:15 p.m. on August 18, 1986, when he heard someone knocking. When he answered the door, the man named Jackson pushed his way into the victim's kitchen. Jackson locked the door behind him and asked the victim for money. When the victim said he did not have any money, Jackson opened the door and let in the other two men.

The victim stated that the lighting conditions in the kitchen were good and he could plainly see the offenders. One of the men, whom the victim recognized from the neighborhood, took his 12-inch television set. The victim grabbed a police club he kept in his kitchen, but Jackson took it from him and began beating him with it. The victim never identified defendant as one of the offenders and he did not know how the fire started.

Eric Thompson, an alleged co-conspirator who was never charged in relation to this occurrence, testified that he and defendant were living together at the time of the incident. On the evening of August 18, 1986, Thompson was drinking in a school yard with defendant, Nathanial Jackson, and Eric Gatlin. They were all intoxicated when Jackson said that he knew where they could get money to buy more liquor. Thompson stated that he did not know what was going to happen at the apartment.

The four men went to the victim's basement apartment. Jackson knocked on the door and the victim let him in. A few minutes later, Jackson opened the door and the others entered.

At that point, the victim reached for a stick and began to jab defendant, who was in the corner of the kitchen. Jackson grabbed the stick and then grabbed the victim and defendant struck the victim two or three times with a metal pipe. The victim fell on top of a table, which collapsed. At the same time, Gatlin came out of the living room with the victim's television set, unlocked the door, and ran outside. Thompson ran out behind him.

Thompson went to his cousin's house, where he spent the night. Defendant also spent the night there. The next day, Thompson, defendant, Jackson, and Gatlin talked about the incident. At that time, defendant stated that Jackson had started the fire, and Jackson said that he would sell the television set. Thompson told the other men that he would not take the blame for something he did not do and that he would turn them in to the police if necessary. According to Thompson, he went to the police the next day.

Detective David Wierzbicki of the Chicago Heights police department testified that he went to Thompson's home on August 20, 1986, at 4 p.m. He told Thompson's girl friend to have Thompson come to the police station. The next night, Thompson went to the police station.

Dr. Raul Delgado testified that the victim suffered a fractured skull from a severe blunt trauma to his head, bruises and lacerations to his face and head, and a fractured left hand.

Milton Batson, an arson investigator, testified that the fire started when a liquid accelerant was spilled on the carpeting and then ignited.

After deliberations, the jury returned guilty verdicts against defendant for attempted murder, home invasion, armed violence, and aggravated battery. Following a sentencing hearing, defendant was sentenced to 20 years' imprisonment for the attempted murder and the home invasion.

On appeal, defendant asserts that the State failed to prove him guilty beyond a reasonable doubt because its only evidence consisted of the uncorroborated, contradicted testimony of an unindicted co-conspirator who had probably made a deal with the State in exchange for his testimony. Defendant argues that Thompson's testimony was suspect and must be evaluated with great scrutiny because he expected leniency on another charge in exchange for his testimony in this case.

Even though a co-conspirator's testimony is suspect and should

be evaluated with great scrutiny (*People v. Baynes* (1981), 88 Ill. 2d 225, 232, 430 N.E.2d 1070), it is sufficient to sustain a conviction if it convinces the jury of the defendant's guilt beyond a reasonable doubt. (*People v. Newell* (1984), 103 Ill. 2d 465, 469-70, 469 N.E.2d 1375.) A reviewing court cannot substitute its own judgment for that of the trier of fact on questions involving the credibility of witnesses or the weight of the evidence (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889), and it will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■ After reviewing the record, we conclude that the evidence in this case does not create a reasonable doubt. The events that occurred inside the victim's home were corroborated except for the number of offenders involved. While the victim testified that there were three offenders, Thompson stated that four men took part. There was also evidence presented that the victim's mental and emotional health had deteriorated since the attack. Where there are any conflicts in the testimony, they are to be resolved by the jury. (*Collins*, 106 Ill. 2d at 261-62.) Therefore, we affirm defendant's conviction.

■ Next, defendant asserts that the trial court improperly precluded him from arguing the substance of an accepted instruction regarding the special scrutiny to be used when considering Thompson's testimony. We agree.

At the conference on jury instructions, the court approved Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) (hereinafter IPI Criminal 2d), which states:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The only evidence against defendant was Thompson's testimony. Therefore, defendant's guilt or innocence was dependent on Thompson's credibility or lack of credibility. Because Thompson was an admitted participant in the offenses, his testimony is suspect and should be considered with great scrutiny. Thus, it was prejudicial error to preclude defendant from fully discussing this crucial jury instruction.

During defendant's closing argument, his attorney stated to the jury as follows:

> "And then we have the star witness, Eric Thompson, who admits his involvement, admits he was there. Now we already know

where Gatlin and Jackson are. They're in jail. There's only one other third guy. Eric Thompson. You'll get a couple instructions from the Judge. I want you to keep \*\*\*. I believe the Judge is going to instruct you when a witness says he was involved in the commission of a crime with the Defendant the testimony of that witness is subject to suspicion.

MR. ROSENDAHL: Objection.

THE COURT: Sustained."

It is the function of the trial court to instruct the jury as to the law. (*Vocke v. City of Chicago* (1904), 208 Ill. 192, 70 N.E. 325.) However, attorneys can, and necessarily must, state what they believe the law to be and base their arguments as to the facts on this interpretation. (*Coyne v. Avery* (1901), 189 Ill. 378, 59 N.E. 788.) In the case of *Martin v. Allstate Insurance Co.* (1981), 92 Ill. App. 3d 829, 416 N.E.2d 347, the court held:

"In the case before us, counsel was interrupted before she could complete her explanation as to what she believed the law to be, and there is no indication in the record that those remarks would not have been consistent with the instructions which the court had already determined would be given. Its ruling thus prevented counsel from placing the facts of the case within an appropriate framework of the law and thereby denied her the right to present the case from the perspective of defendant. It was error to so restrict defense counsel's argument, and we believe that defendant was prejudiced thereby." *Martin*, 92 Ill. App. 3d at 834.

In the case of *Boatmen's National Bank v. Martin* (1992), 223 Ill. App. 3d 740, 585 N.E.2d 1328, during closing arguments, the plaintiff used poster-sized exhibits of selected jury instructions and the issue was whether it was error. The court held:

"Nothing prohibits the use of poster-sized exhibits of jury instructions. [Citations.] On the contrary, courts have held that 'in closing argument, counsel for the parties are permitted to state their belief as to the anticipated instructions and develop their arguments in accordance with these instructions.' *Sidorewicz v. Kostelny* (1981), 102 Ill. App. 3d 851, 854, 430 N.E.2d 377, 379.

\* \* \*

Surveys of jurors have shown that jurors often have difficulty relating the case to the instructions—a difficulty best overcome by arguing the instructions during closing argument, and 'enlarging a copy of the instructions on an overhead projector or poster-board.' (Green, *A Jury Researcher Joins the Jury*, 91 Case & Comment 28, 35 (1986).) \*\*\* There is no error in this procedure; to the contrary, it should be encouraged." *Boatmen's National Bank*, 223 Ill. App. 3d at 745.

In this case, the witness was involved in the criminal actions that took place and defendant's attorney was attempting to explain an approved jury instruction that the court was going to give. Therefore, his attorney's remarks were not misleading and his attorney had a right to express, in the closing argument, defendant's belief concerning the content of the anticipated accomplice instruction. (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 464 N.E.2d 866.) It is crucial that juries understand that the law requires the trier of fact to give special scrutiny to the testimony of accomplices. The importance of this instruction concerning the unreliability of accomplice testimony has been shown by cases which have held it to be reversible error not to give the instruction to the jury. (See *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31; *People v. Carreon* (1987), 162 Ill. App. 3d 990, 516 N.E.2d 372; *People v. Buffington* (1977), 51 Ill. App. 3d 899, 366 N.E.2d 1099.) The court erroneously prevented defense counsel from arguing this crucial instruction to the jury.

Although the evidence linking defendant to the offenses was sufficient for a jury to find him guilty beyond a reasonable doubt, there was not such overwhelming evidence of guilt so as to find the error harmless. (*People v. Enis* (1990), 139 Ill. 2d 264, 298, 564 N.E.2d 1155.) Thus, the trial court's limitation on the defense counsel's argument was prejudicial to defendant.

■ Next, defendant asserts that prosecutorial misconduct during opening and closing arguments severely infringed on his right to a fair trial. Defendant contends that the prosecutor shifted the burden to him by stating, "Remember in counsel's opening statement when he said to you that you're going to hear evidence that Thomas Glasco was working in Michigan? Where is that evidence? Where is that? Where is any of that?" Defendant further contends that the prosecutor improperly stated that Thompson could no longer be charged with any crimes because the statute of limitations had run.

In both instances, the prosecutor's improper remarks were cured. The defense counsel's objections were sustained and the trial court instructed the jury to disregard the remarks. *People v. Franklin* (1990), 135 Ill. 2d 78, 100, 552 N.E.2d 743.

The other allegedly improper remarks were waived because they either were not objected to at trial or not included in the motion for a new trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 188, 522 N.E.2d 1124.

Based on the foregoing, the circuit court judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.

GREIMAN, J., concurs.

PRESIDING JUSTICE TULLY, dissenting:

I must respectfully dissent from the majority's view. The trial court's action in sustaining the State's objection to defense counsel's desire to argue IPI Criminal 2d No. 3.17, concerning accomplice liability, is at best, harmless.

"The right to argue a cause in a criminal case is absolute, though subject to the discretionary power of the trial judge to control, within reasonable limits, how the right shall be enjoyed." (*People v. Jayne* (1977), 52 Ill. App. 3d 990, 1012, 368 N.E.2d 422; see also *People v. Diaz* (1971), 1 Ill. App. 3d 988, 275 N.E.2d 210.) Absent an abuse of discretion, a trial court's ruling regarding the character and scope of closing argument shall not be disturbed. *People v. Guyon* (1983), 117 Ill. App. 3d 522, 533-34, 453 N.E.2d 849.

In this case I fail to perceive how the trial court abused its discretion. The thrust of the majority's argument with regard to this issue is that because the trial court sustained the State's objection, defense counsel was somehow prevented from arguing his case. I believe the trial court was merely emphasizing that it is its role to explain the law to the jury and not the function of counsel. Moreover, it is simply not fair to say that defendant was prevented from arguing to the jury that Thompson was not a credible witness.

During summation, defense counsel extensively argued that Thompson's testimony lacked credibility. Thompson was called a liar; defense counsel recited with specificity the answers given by Thompson in attacking his testimony of when he reported the incident to the police; and defense counsel repeatedly suggested that Thompson pointed the finger at defendant in order to protect himself and, in doing so, fabricated a story. Thus, defense counsel was afforded ample opportunity to attack Thompson's veracity and did so zealously.

Finally, even assuming, *arguendo*, that the trial court erred in sustaining the State's objection, where is the prejudice to defendant? Even the majority opinion admits there was enough evidence to prove defendant guilty beyond a reasonable doubt. Furthermore, the jury was given Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) and the trial court instructed the jury on it. Any possible error that may have occurred was cured by these instructions and, therefore, harmless. *People v. Myles* (1985), 131 Ill. App. 3d 1034, 476 N.E.2d 1333.

Accordingly, I would affirm the judgment of the circuit court.