# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3707

RAYMOND JOHNSON and ROBERT JOHNSON,

*Plaintiffs-Appellants*,

v.

LEE WATTENBARGER and RUTH WATTENBARGER,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 7187—**William J. Hibbler**, *Judge.*

———————

SUBMITTED MARCH 4, 2004—DECIDED MARCH 22, 2004

———————

Before EASTERBROOK, MANION, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* All too often both litigants and judges disregard their first duty in every suit: to determine the existence of subject-matter jurisdiction. In this litigation, by contrast, the defendants and judge were alert to jurisdiction and endeavored to apply the requirements of 28 U.S.C. §1332. Unfortunately, the judge waited until two years after the case began and the resolution of several claims on the merits had cut down the stakes. Because the

diversity jurisdiction depends on matters as they stand when the complaint is filed, this was a misstep.

Lee and Ruth Wattenbarger hired Raymond and Robert Johnson (doing business as RLJ & Associates) to remodel their home. According to the Johnsons, the price was discounted in exchange for promotional assistance that the Wattenbargers agreed to provide. Relations eventually broke down: the Johnsons say that the Wattenbargers required changes after the contract had been signed, delayed in approving work, failed to move a utility pole, and then refused to pay or to provide the promised promotional consideration; the Wattenbargers say that the work was not done right and that they never promised to recommend the Johnsons to their friends and neighbors. In this federal suit, the Johnsons originally sought more than $200,000— about $15,000 still unpaid on the contract, $33,000 for the value of the referrals and other assistance that the Wattenbargers did not furnish (the Johnsons describe this as the amount of the discount in the contract price), $28,000 in profits lost on other contracts because the extra work on the Wattenbarger residence kept them from other business, at least $59,000 in other lost profits that they attribute to disparagement and intentional interference with economic advantage, $42,000 in lost wages that they could have made had they been able to move on to other work, $75,000 for intentional infliction of emotional distress, and a few smaller items.

In a single motion the Wattenbargers sought dismissal on two grounds: that the amount in controversy did not exceed $75,000 (diversity of citizenship is not in question) and that the complaint failed to state a claim on which relief may be granted. First the district court dismissed on the merits all of the claims by Robert Johnson, ruling that he had not alleged a contractual relation with the Wattenbargers. Next the court dismissed several of Raymond Johnson's claims under Fed. R. Civ. P. 12(b)(6). At this point the judge

calculated that the surviving claims exceeded $75,000. After discovery had been completed, however, the district court reassessed the amount in controversy with the benefit of an interrogatory answer in which the Johnsons more clearly set out their damages calculations. The district court concluded that the remaining dispute was limited to $47,745 for breach of the Wattenbargers' oral and written promises and $24,250 in lost profits from other contracts that the Johnsons say they had been forced to cancel in order to do extra work for the Wattenbargers. These come to $71,995, and as this is below $75,000 the judge dismissed the Johnsons' complaint (and the Wattenbargers' counter-claim) without prejudice.

Combining partial decision on the merits with a jurisdictional dismissal violates the norm that courts cannot decide any controversy over which they lack subject-matter jurisdiction. It is the *case*, rather than the *claim*, to which the $75,000 minimum applies. If the complaint as filed puts more than $75,000 at issue, then a district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages. Whether §1332 supplies subject-matter jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction. See *Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991); *Louisville, New Albany & Chicago Ry. v. Louisville Trust Co.*, 174 U.S. 552, 566 (1899); *Molan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539-40 (1824); *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 130 F.3d 290, 292-93 (7th Cir. 1997). (The few exceptions to this principle involve events, such as dismissal of a non-diverse party, that make federal jurisdiction secure. If a suit can start over in the same court immediately after being tossed out, there is no point to a dismissal. See *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989).) If, however, the case as a whole does not entail at the get-go a controversy exceeding $75,000, then the court must not resolve

any aspect of it on the merits. By combining partial disposition of the merits with a dismissal of what remained, the district court either improperly entered a partial substantive judgment in a case over which it lacked jurisdiction, or improperly found that jurisdiction was missing.

Here the error was the latter one. Even after multiple theories of relief had been carved off, the stakes still were $71,995. What had been jettisoned along the way amounted to at least $3,006 more. Only if, on the date the case began, it was legally impossible for any of the Johnsons' additional damages theories to come to fruition would it have been proper to dismiss for want of jurisdiction. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). "Impossibility" differs from the standard under Rule 12(b)(6). A legal shortcoming does not equate to a jurisdictional shortfall, see *Bell v. Hood*, 327 U.S. 678 (1946), else defendants would never *win* in diversity cases. They could at best achieve jurisdictional dismissals, followed by new suits in state court. Thus "[s]ubject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim." *Louque v. Allstate Insurance Co.*, 314 F.3d 776, 782 (5th Cir. 2002). A demand is legally impossible for jurisdictional purposes when it runs up against a statutory or contractual cap on damages, see *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350 (7th Cir. 1995), or when the theories of damages employ double counting, see *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). Some of the Johnsons' demands may reflect different ways of estimating a single loss; for example, sums not received from other customers and lost wages may be two descriptions of the same injury. But the Johnsons' theories include at least $3,006 in non-duplicative items that cannot be called so insubstantial that application of the *St. Paul Mercury* and *Bell* standard would allow the judge to dismiss on jurisdictional grounds.

Section 1332(b) provides that a plaintiff who sues under the diversity jurisdiction and ultimately receives less than $75,000 loses any entitlement to costs and may be required to pay the adversary's costs. This device is the principal safeguard against inflated demands. When deciding whether the case may be litigated to conclusion in federal court, the district judge should apply the standards of *St. Paul Mercury* and *Bell* to the original complaint, and §1332(b) to the bottom line, rather than attempt to ascertain day by day whether the judgment is likely to come in under $75,000.

One final note. Dismissals of some claims under Rule 12(b)(6) may have been influenced by a belief that complaints must include all important facts and legal theories (such as the existence of a contract between Robert Johnson and the Wattenbargers). Yet the federal rules do not require plaintiffs to plead either facts or law. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992). It may be prudent for the district court to review its decisions under Rule 12(b)(6) to ensure that it has not asked for more than Fed. R. Civ. P. 8 demands of a complaint.

The judgment of the district court is vacated, and the matter is remanded for decision on the merits.

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*