# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2855

MERIDIAN SECURITY INSURANCE CO.,

*Plaintiff-Appellant,*

*v.*

DAVID L. SADOWSKI, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 517—**James B. Zagel**, *Judge.*

ARGUED FEBRUARY 9, 2006—DECIDED MARCH 22, 2006

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Meridian Security Insurance filed this action under the diversity jurisdiction. 28 U.S.C. §1332(a)(1). It asked the district court to issue a declaratory judgment that it need not defend or indemnify its insured, The Rose Depot of Arlington Heights, against a claim pending in state court. Kamal Haddad, who filed that suit on behalf of a class, sought damages on account of unsolicited advertising faxes that The Rose Depot had sent to prospective customers.

The Telephone Consumer Protection Act prohibits most unsolicited commercial solicitations by facsimile and permits the court to award $500 per fax, a sum that may be

trebled if "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection". 47 U.S.C. §227(b)(3). Haddad proposed to represent a class of "more than 50" recipients of fax ads, and Meridian calculated the stakes of its federal suit by multiplying $1,500 (the maximum award per fax) by 51 (the minimum size of the class), which yields $76,500, or $1,500 more than the minimum required for federal jurisdiction. See *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), which holds that $1,500 multiplied by the number of class members is the amount "in controversy" under the Telephone Consumer Protection Act. The expense of providing a legal defense against Haddad's suit also counts for purposes of §1332, but Meridian did not try to estimate this, thinking that the indemnity alone suffices.

Without holding a hearing under Fed. R. Civ. P. 12(b)(1), the district court dismissed the complaint for want of jurisdiction. The district court started with the norm that a dispute about an insurer's duty to indemnify generally is not ripe for decision until the insured has been called on to pay—for until then the precise ground of liability, and thus the relation of the insured's liability to the policy's coverage and exclusions, is uncertain. See, e.g., *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580 (7th Cir. 2003); *Nationwide Insurance Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); *Travelers Insurance Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992). Then, relying exclusively on other decisions issued by judges in the Northern District of Illinois, the court held that the stakes of any portion of a dispute not ripe for federal adjudication never count toward the amount in controversy under §1332.

Because Meridian has not alleged that attorneys' fees alone will exceed $75,000, the court dismissed the suit outright. This put Meridian in an awkward position, for Illinois (where Haddad's suit was pending) requires an insurer to defend its client on demand, no matter how clear

the policy may be that there is no such duty, unless it prosecutes an action for a declaratory judgment that the claim is outside the policy's coverage. See *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371, 710 N.E.2d 1228, 1230-31 (1999). We have held that suits materially identical to Haddad's do not require either defense or indemnity under policies materially identical to Meridian's. See *American States Insurance Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004) (Illinois law). Yet the district court's decision left Meridian without a pending declaratory-judgment action or any apparent way to secure a federal adjudication, and thus with a state-law duty to defend The Rose Depot notwithstanding the policy's limitations. (Illinois might have allowed Meridian to pursue a declaratory-judgment action in its own courts, despite the passage of time in which none was on file, but as an out-of-state corporation with deep pockets, Meridian was unenthusiastic about that option.)

While Meridian's appeal was pending, Haddad and The Rose Depot settled for $7,500; attorneys' fees for the defense came to about $14,000. So Meridian's total obligation if the policy covers Haddad's claims turns out to be about $21,500. But these developments do not affect jurisdiction, which depends on the amount that was in controversy when the federal suit began. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938). Post-filing events may mean that Meridian cannot recover costs (and must pay defendants' costs) even if it prevails, see 28 U.S.C. §1332(b), but do not terminate jurisdiction that was proper at the outset. Thus we must decide whether the controversy exceeded $75,000 before the underlying dispute was resolved.

The district court supposed that ripeness always is a jurisdictional doctrine. Yet "ripeness is peculiarly a question of timing" rather than a limit on subject-matter jurisdiction.

*Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). See also, e.g., *Buckley v. Valeo*, 424 U.S. 1, 113-18 (1976). Although a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies—and this aspect of ripeness is part of the case-or-controversy requirement, see *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57 n.18 (1992); *Socialist Labor Party v. Gilligan*, 405 U.S. 583 (1972)—these parties' disagreement about potential indemnity is part of a larger controversy that is neither conjectural nor speculative. Meridian's potential obligation to indemnify The Rose Depot was in controversy from the moment this suit began and could have been resolved while the state suit was ongoing. Because the duty to defend extends to many suits in which there will be no duty to indemnify—for defense depends on what the plaintiff alleges, while indemnity is limited to what the plaintiff proves, see *Lockwood International, B.V. v. Volm Bag Corp.*, 273 F.3d 741, 745-47 (7th Cir. 2001)—a declaratory judgment that the insurer need not defend means that it need not indemnify either, whether or not the plaintiff makes good on his contentions. Had the district court concluded, as Meridian maintained, that the insurance does not cover Haddad's allegations, it would have prevailed on defense and indemnity at a stroke. No more is needed to show that the value of indemnity was "in controversy" on the date this federal case began.

Many decisions in this and other circuits count the potential outlay for indemnity toward the amount in controversy, whether or not adjudication about indemnity should be deferred until the state case is over. See, e.g., *Grinnell Mutual Reinsurance Co. v. Shierk*, 121 F.3d 1114 (7th Cir. 1997); *Motorists Mutual Insurance Co. v. Simpson*, 404 F.2d 511, 515 (7th Cir. 1968); *Maryland Casualty Corp. v. United Corp.*, 111 F.2d 443, 447 (1st Cir. 1940); *U.S. Fidelity & Guaranty Co. v. Pierson*, 97 F.2d

560, 562 (8th Cir. 1938); *Hartford Insurance Group v. Lou-Con, Inc.*, 293 F.3d 908, 911-12 (5th Cir. 2002); *Farmers Insurance Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979). The contrary argument has been made often enough that both of the principal treatises on federal practice cover the topic, and both conclude that the potential indemnity obligation counts toward the jurisdictional minimum. 12 *Moore's Federal Practice-Civil* §57.22[8][b] (2005 rev.); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14B *Federal Practice & Procedure* §3710 at 262-70 (3d ed. 1998). Wright, Miller, and Cooper add that the argument for the exclusion of the potential indemnity "never has been accepted by the federal courts." *Id.* at 268. This passage needs amendment, now that several judges in the Northern District of Illinois have swallowed the bait, but it could be revised in light of today's decision to say that the position "never has been accepted by any federal court of appeals."

Appellees offer additional arguments in defense of their judgment, as they are entitled to do. One is that, because none of the class members would be entitled to recover more than $1,500, the rule against aggregating multiple litigants' claims to reach the jurisdictional floor, see *Snyder v. Harris*, 394 U.S. 332 (1969), prevents a federal court from exercising jurisdiction. Yet Meridian has not aggregated multiple parties' claims. From its perspective there is only one claim—by its insured, for the sum of defense and indemnity costs. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347-48 (1977), holds that the anti-aggregation rule does not apply to a federal declaratory-judgment action between a single plaintiff and a single defendant, just because the unitary controversy between these parties reflects the sum of many smaller controversies. No more need be said on this subject.

Appellees' other contention—which echoes some language in the district court's opinion—is that Meridian did not

"prove" a "reasonable probability that jurisdiction exists." The requirement of "proof" comes from *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (if plaintiff's "allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."). The "reasonable probability" language comes from *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), and has been repeated in six other decisions of this circuit plus more than 80 decisions of district judges within our jurisdiction—and, as far as we can ascertain, by no judge outside this circuit. See *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001); *Target Market Publishing, Inc. v. Advo, Inc.*, 136 F.3d 1139, 1142 (7th Cir. 1998); *Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993). Judges of the seven district courts within this circuit now regularly dismiss suits under the diversity jurisdiction with the observation that the plaintiff has not "proved" that there is a "reasonable probability" that the judgment will exceed the threshold.

*Shaw*'s mention of "reasonable probability that jurisdiction exists" thus has been taken to mean that uncertainty about the stakes must be resolved against the proponent of jurisdiction. That's not what *Shaw* set out to establish. In retrospect it is clear that the turn of phrase was infelicitous. We now retract that language; it has no role to play in determining the amount in controversy.[†]

---

[†]  Although this opinion does not overrule any decision, the extent to which "reasonable probability that jurisdiction exists" has

(continued...)

*McNutt* holds that the proponent of federal jurisdiction has the burden of proof (which is to say, bears the risk of non-persuasion). General Motors Acceptance Corporation had asked a federal court to enjoin state officials from enforcing a law that regulated the purchase and sale of retail installment contracts. Although GMAC asserted that the amount in controversy requirement (then $3,000) was satisfied, it did not try to explain how. It alleged only that it bought and sold millions of dollars of financing paper annually. The Court held this insufficient, as the controversy concerned the effect of the state statute and not GMAC's gross receipts. Because GMAC was unwilling even to allege the difference between the value of its business free from the state's requirement and its value if the law were enforced, the Court held that jurisdiction had not been established. Near the close of this opinion the Justices remarked that jurisdictional facts, if contested, must be supported by "competent proof." That statement rested on the Court's understanding of §5 of the Act of March 3, 1875, 18 Stat. 472, which has been superseded by the Federal Rules of Civil Procedure. But the Civil Rules, which took effect a little more than two years after *McNutt*, do not alter the requirement that a party that chooses federal court set out the basis of federal jurisdiction and prove any contested factual allegation. See Fed. R. Civ. P. 8(a)(1), 12(b)(1); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).

What the proponent of jurisdiction must "prove" is contested factual assertions—for example, where each party resides plus any plans for change of residence, in order to establish domicile, or what state issued a corporation's

(...continued)

become a catchphrase has led us to circulate this opinion before release to all active judges under Circuit Rule 40(e). No judge favored a hearing en banc.

charter. Jurisdiction itself is a legal conclusion, a *conse-quence* of facts rather than a provable "fact." The Court made that clear two years after *McNutt*, holding in *St. Paul Mercury* that "the sum claimed by [the proponent of federal jurisdiction] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." 303 U.S. at 288-89 (footnotes omitted). Although the proponent of jurisdiction may be called on to prove facts that determine the amount in controversy—such as the economic effect that compliance with the law would have had on GMAC—once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is "legal certainty" that the controversy's value is below the threshold. See *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006); *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350 (7th Cir. 1995); *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203 (7th Cir. 1997).

As we remarked in *Rising-Moore*, this standard usually operates in a transparent and simple way when the case begins in federal court and the complaint asserts an amount in controversy, as Meridian did here. Defendants might have called on Meridian to prove that it actually had issued an insurance policy to The Rose Depot, that Haddad really sought to represent more than 50 other recipients of junk faxes, and that The Rose Depot had notified Meridian of the claim and tendered its defense. Those are facts, though none of the allegations about them has been contested. Whether damages will exceed $75,000 is not a fact but a prediction, and with respect to that subject the court must decide whether "to a legal certainty . . . the claim is really for less than the jurisdictional amount". For the reasons given above (and in *Brill*), a court cannot say that; Haddad's suit exposed Meridian to the expense of mounting a legal defense plus the risk of $76,500 or more in indemnity.

*Shaw*, where the "reasonable probability" language originated, dealt with one of those situations in which it can be tough to apply the *St. Paul Mercury* standard. Shaw began his suit in state rather than federal court. Illinois, where Shaw filed suit, limits what a complaint can say about remedies to matters that determine the appropriate court. A plaintiff may state, for example, that he wants more than $15,000 (which allocates the suit to the circuit court), less than $15,000 (which puts it in a specialized court with expedited procedures), or less than $5,000 (which diverts it to a small-claims tribunal). Other states, of which Indiana is an example (discussed in *Rising-Moore*), forbid all mention of how much money the plaintiff hopes to recover. These rules get rid of headline-grabbing but unrealistic demands. Unfortunately, they also complicate the question whether a suit may be removed, for if the plaintiff does not say what he wants, how can the *St. Paul Mercury* standard be applied? That's the question with which this court wrestled in *Shaw*.

What we held there, and have reiterated in decisions such as *Rising-Moore* and *Brill*, is that the removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover. We have suggested several ways in which this may be done—by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations (as in *Brill*); by reference to the plaintiff's informal estimates or settlement demands (as in *Rising-Moore*); or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands (see *Rubel v. Pfizer Inc.*, 361 F.3d 1016 (7th Cir. 2004)). The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an

injunction would cost the defendant). See *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 610 (7th Cir. 1997). Once the estimate has been made—and contested factual allegations that support the estimate have been established in a hearing under Rule 12(b)(1) by admissible evidence (that's what "competent" proof means)—then the *St. Paul Mercury* standard comes to the fore, and the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.

In passing, *Shaw* remarked that the "competent proof" required when factual allegations must be established means "proof to a reasonable probability that jurisdiction exists." The context for this phrase is: "the burden rests on the defendant in a removal action to prove that the amount in controversy is sufficient. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Defendants seeking removal may meet that burden by a preponderance of the evidence, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), which we take to mean proof to a reasonable probability that jurisdiction exists." 994 F.2d at 366. The phrase was coined as another way to put the established point that facts have been established only when supported by a preponderance of the evidence. Footnote 2, dropped immediately after the word "exists", states the norm of *St. Paul Mercury* and explains that "reasonable probability" is a lower hurdle than many district courts had employed. But every attempt to restate an old norm ("preponderance of the evidence") in new words ("reasonable probability") carries the risk that new language will be understood as a new rule. That's what has happened. The phrase has acquired a life of its own.

Many decisions by district courts in this circuit—of which the decision under review is one example, and *Wilson v. McRae's, Inc.*, No. 05 C 2125 (N.D. Ill. Aug. 29, 2005), is another—employ the phrase not as a variant on the prepon-

derance standard (which is how *Shaw* used it) but as a replacement for the standard of *St. Paul Mercury*. Instead of asking whether contested factual allegations have been established by a preponderance of the admissible evidence, some district judges have asked whether these facts demonstrate a "reasonable probability" that the judgment will exceed $75,000. Excessive attention to the phrase "reasonable probability that jurisdiction exists" may lead a judge to neglect *St. Paul Mercury* (as in the decision under review) or get its point backward (the opinion in *Wilson*, after quoting the "reasonable probability" language, stated that jurisdiction is proper only if " 'to a legal certainty' the court is convinced that [that the plaintiff] is entitled to over $75,000 in damages" (slip op. 6-7)).

Language that came into being as a restatement of "more likely than not" (the usual preponderance standard) for matters of fact has been misapplied to the inferences drawn *from* facts. And it has been used to displace the Supreme Court's rule for handling uncertainty about what will happen at trial (jurisdiction exists unless it is legally impossible for the recovery to exceed the minimum) with a much different standard (jurisdiction does not exist unless there is a "reasonable probability" that the recovery will exceed the minimum). All legal phrases have some potential for misuse, which must be tolerated when there is no good alternative. But there are *very* good alternatives to "reasonable probability"—the preponderance standard (for factual disputes) and the holding of *St. Paul Mercury* (for predictions about the value of the judgment). The new phrase causes problems without offsetting benefits. "Reasonable probability that jurisdiction exists", a phrase with no provenance and no following outside this circuit, is banished from our lexicon.

To recap: a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence.

Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. See, e.g., *Johnson v. Wattenbarger*, 361 F.3d 991 (7th Cir. 2004). (*Rising-Moore* and *Brill* are other recent instantiations of this principle.) Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed. None of Meridian's jurisdictional allegations was contested, so the standard of proof is irrelevant. And, when Meridian filed this suit, a court could not be sure that the plaintiffs in state court were bound to recover less than $75,000 from The Rose Depot. So this case is properly in federal court under the diversity jurisdiction.

The judgment of the district court is vacated, and the case is remanded with instructions to resolve the dispute on the merits.

No. 05-2855                                                      13

A true Copy:

       Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*
