In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2606

LM INSURANCE CORPORATION,

*Plaintiff-Appellant,*

*v.*

SPAULDING ENTERPRISES INCORPORATED,
SPAULDING MOVING AND STORAGE INCORPORATED,
SPAULDING TRUCKING INCORPORATED,
JOHN J. LALAGOS, JEAN P. LALAGOS,
LAURA ROSETTI, RALLY CAPITAL SERVICES, LLC, and
JEFFREY D. SAMUELS,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 07 C 1835—**Samuel Der-Yeghiayan**, *Judge.*

———————

ARGUED APRIL 3, 2008—DECIDED JULY 8, 2008

———————

Before FLAUM, MANION, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff LM Insurance Corporation ("LM") brought an eight count suit against eight defendants in the Northern District of Illinois under that court's federal diversity jurisdiction. The suit centered around an outstanding judgment of $185,776 Defendant Spaulding Enterprises Incorporated ("Spaulding Enter-

prises") owed LM from a prior lawsuit, and Spaulding Enterprises's alleged efforts to shift its assets to various sham corporations to avoid paying this debt. All defendants challenged federal jurisdiction, claiming that the amount in controversy requirement of $75,000 was not satisfied. The district court agreed with Defendants, finding that the pending suit was the improper vehicle for pursuing the earlier judgment, and that any damages stemming from the transfer of Spaulding Enterprises's assets were capped by the corporation's assets at that time, which the district court found to be below $75,000. For the following reasons, we affirm in part and reverse in part the district court's grant of Defendants' Motion to Dismiss.

## I. Background

This suit stems from an earlier lawsuit in which LM was awarded damages of $218,667 from Spaulding Enterprises. A month after judgment was entered, in October 2006, LM brought a citation to discover assets, which resulted in $21,691 of Spaulding Enterprises's assets being frozen and then turned over to LM, bringing Spaulding Enterprises's liability down to $196,976. At this point, unbeknownst to LM, Spaulding Enterprises began maintaining its same business operations, including its incoming and outgoing payments, through Spaulding Moving's accounts.

Spaulding Enterprises and Spaulding Moving were closely linked. They shared the same address and were largely owned and operated by the same people, with Spaulding Enterprises being equally owned by husband and wife John (President of Spaulding Enterprises) and

Jean (Secretary of Spaulding Enterprises) Lalagos, and Spaulding Moving being owned by John Lalagos, who also served as the company's President.

In December 2006, LM and John Lalagos settled upon an agreement for repaying Spaulding Enterprises's debt, whereby the corporation would pay a discounted judgment in monthly installments of $5,600. Only the first two payments were made, however, leaving Spaulding Enterprises's outstanding liability at $185,776.

It was at this time that Spaulding Enterprises entered into an Assignment for the Benefit of Creditors. On February 8, 2007, LM received a letter from Jeffrey D. Samuels of Rally Capital Services, informing LM that he would be serving as Spaulding Enterprises's Trustee/Assignee in its Assignment for the Benefit of Creditors. The letter stated that the Assignment was occurring due to financial stress stemming from an outstanding legal judgment owed by Spaulding Enterprises, and calculated the corporation's current assets at $150,000—the amount of its accounts receivable. LM was informed in the letter that Spaulding Enterprises had conveyed all its assets to Samuels and that Samuels had already accepted a purchase agreement from Spaulding Trucking Company ("Spaulding Trucking") to purchase Spaulding Enterprises's assets for $5,000. The letter also stated, however, that Samuels was required, per the Purchase Agreement, "to solicit higher and better bids" for the assets, which Samuels would do by posting a Notice of Sale in the *Chicago Tribune* at a future date.

According to LM, notice was never posted in the *Chicago Tribune*. Instead, at the time LM received the February 8 letter, Spaulding Enterprises's assets had already been conveyed to Spaulding Trucking, a new company incor-

porated on January 26, 2007 that shared the same address as the other two "Spaulding" enterprises. The President and owner of this new corporation was Laura Rosetti, Jean Lalagos's sister. John and Jean Lalagos also had positions at Spaulding Trucking, with Jean serving as the company's Treasurer and John being an employee. On January 31, Spaulding Enterprises and Spaulding Trucking had entered into an Agreement for the Purchase and Sale of Assets, with the Assignment for the Benefit of Creditors and transfer of Spaulding Enterprises's assets occurring on February 2. Rally's fee for serving as the Assignee in these transactions was $5,000, the same amount paid by Spaulding Trucking to purchase Spaulding Enterprises's assets. The check to Rally was signed by John Lalagos in his capacity as Spaulding Trucking's employee.

On April 3, 2007, LM brought this lawsuit in the Northern District of Illinois pursuant to federal diversity jurisdiction.[1] The Complaint included the following eight counts:

- **Count 1** Breach of Fiduciary Duty against Rally Capital Services and Samuels with respect to the Assignment for the Benefit of Creditors

- **Count 2** Inducement of a Breach of Fiduciary Duty against John Lalagos, Jean Lalagos, and

---

[1] As is required for federal jurisdiction to exist under 28 U.S.C. § 1332, complete diversity exists between the parties, *see Strawbridge v. Curtiss*, 7 U.S. 267 (1806), with Plaintiff LM being an Iowa corporation with its principal place of business in Massachusetts, and all individual and corporate defendants hailing from Illinois.

Spaulding Trucking for their involvement with Samuels in the Assignment for the Benefit of Creditors

- **Count 3** Breach of Fiduciary Duty against John and Jean Lalagos for diverting their assets to Spaulding Moving and Spaulding Trucking

- **Count 4** Fraudulent Conveyance against Spaulding Moving and Spaulding Trucking

- **Count 5** Successor Liability against Spaulding Trucking

- **Count 6** Alter Ego claim against all three "Spaulding" corporations, as well as John and Jean Lalagos

- **Count 7** Conspiracy to Defraud against all defendants, which included all parties already named in the above counts, as well as Rosetti, for conspiring to defraud LM of its judgment against Spaulding Enterprises

- **Count 8** Fraud against all defendants

With respect to the first three counts for breach of fiduciary duty, LM sought damages "of at least $150,000," the value of Spaulding Enterprises's accounts receivable as listed on the February 8 letter regarding the Assignment for the Benefit of Creditors, as well as punitive damages. Counts 4, 5, and 6 all sought damages of $185,776, the outstanding debt from the earlier lawsuit Spaulding Enterprises owed LM. The amount of damages sought in Counts 7 and 8 was not specified, with both claims seeking damages "in an amount to be determined at trial."

After the parties had submitted a Jurisdictional Status Report in accordance with an order by the district court, all defendants joined in filing a Motion to Dismiss for Lack of Subject Matter Jurisdiction, claiming that the amount in controversy did not exceed $75,000 as is required for diversity jurisdiction to exist under 28 U.S.C. § 1332(a). Along with the motion, Defendants also submitted evidence that the February 8 letter had incorrectly placed Spaulding Enterprises's assets at $150,000, when in fact, its accounts receivable had already been sold to a bank. Instead, the evidence provided by Defendants indicated that Spaulding Enterprises's accounts receivable, as of January 31, 2007, were $159,000, and that as of that same date, the bank held $138,254 of that amount. Thus, Defendants claimed that at best, Spaulding Enterprises's assets at the time of the Assignment for the Benefit of Creditors were approximately $20,000.

The district court, on June 27, 2007, granted Defendants' Motion to Dismiss. With respect to those claims for the outstanding judgment of $185,776, the court determined that all of LM's claims were solely related to the alleged fraudulent hiding and assignment of Spaulding Enterprises's assets, not to the outstanding judgment. Moreover, the district court stated that other supplemental proceedings, such as a citation to discover assets, were at LM's disposal to attempt to claim the $185,776. The district court then turned to the value of Spaulding Enterprises's assets at the time of the Assignment for the Benefit of Creditors, crediting Defendants' uncontroverted evidence that Spaulding Enterprises had sold all its accounts receivable to the bank. Having found that only "modest compensatory damages" were available, the district court also determined that any punitive damages awarded would be insufficient to satisfy the amount in

controversy requirement. Accordingly, the district court granted Defendants' Motion to Dismiss, and this appeal followed

.

## II. Discussion

The sole issue for this Court to address is whether LM satisfied the amount in controversy requirement for purposes of federal diversity jurisdiction. We review the district court's decision concerning subject matter jurisdiction *de novo*, and review its jurisdictional factual determinations for an abuse of discretion. *Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).

Under 28 U.S.C. § 1332, federal courts have jurisdiction over civil suits between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This Court recently, in *Meridian Security Insurance Co. v. Sadowski,* clarified the proper standard to be applied when it is contested whether the amount in controversy requirement has been satisfied:

> [A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those juris-dictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is legally certain that the re-covery (from plaintiff's perspective) or cost of com-plying with the judgment (from defendant's) will be

less than the jurisdictional floor may the case be dismissed.

441 F.3d 536, 543 (7th Cir. 2006) (internal citations and quotations omitted) (retracting the often-misused phrase coming from *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), that the proponent of federal jurisdiction must show a "reasonable probability that jurisdiction exists"). Thus, for LM's counts claiming Spaulding Enterprises's assets at the time of the Assignment for the Benefit of Creditors, LM had to prove by a preponderance of the evidence that Spaulding Enterprises's assets exceeded $75,000. As for those counts claiming damages equaling the outstanding judgment of $185,776, Defendants concede that figure represents the outstanding judgment, but argue that it is a "legal certainty" that the outstanding debt owed by Spaulding Enterprises prior to the Assignment for the Benefit of Creditors is not a permissible remedy for those claims.

While Defendants challenged the amount in controversy with respect to all counts, analyzing whether the $75,000 is satisfied for each individual count is unnecessary, since "[i]t is the *case*, rather than the *claim*, to which the $75,000 minimum applies." *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) (emphasis in original). Therefore, so long as the amount in controversy requirement is satisfied with respect to one count (or the proper aggregation of counts, *see Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 585 (2005) (Ginsburg, J., dissenting) ("[t]his Court has long held that, in determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated") (citing *Edwards v. Bates County*,

163 U.S. 269, 273 1896))) for each defendant, our analysis may stop.

Additionally, in this case, because there are multiple defendants, the amount in controversy may be aggregated among the different defendants in certain circumstances. This Court has established that, "when there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant." *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1081 (7th Cir. 2001). As will be discussed, under these principles, it is clear that the amount in controversy requirement was satisfied for LM's alter ego claim, as well as Counts 1-3 which claimed punitive damages for breaches of fiduciary duty. This satisfies the amount in controversy requirement for all defendants except Rosetti, thus requiring this Court to analyze the two counts in which she is named—Counts 7 and 8 concerning fraud and a conspiracy to defraud.

### A. Alter Ego

Of the eight defendants in LM's suit, five of them were named in Count 6, which alleged that Spaulding Moving, Spaulding Trucking, and John and Jean Lalagos were all alter egos of Spaulding Enterprises, and thus all five defendants are liable for Spaulding Enterprises's outstanding debt of $185,776 owed to LM. Illinois law is clear that a judgment creditor can bring a claim to pierce the corporate veil of the debtor corporation in a new

cause of action. *Peetoom v. Swanson*, 778 N.E.2d 291, 296-97 (Ill. App. Ct. 2002). The fact that it was not legally impossible for LM to recover the $185,776 judgment from the five defendants named in this Count is further confirmed by this Court's decision in *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519 (7th Cir. 1991). Although that case did not concern a dispute over the amount in controversy requirement, it did involve a factual situation very similar to the case at hand. There, the plaintiff had been awarded a judgment against The Pepper Source in earlier litigation. *Id.* at 520. The Pepper Source, however, lacked any assets, so the plaintiff brought an alter ego claim under Illinois law against The Pepper Source, its owner, and four other corporations owned by the same individual. *Id.* After initially remanding the district court's grant of summary judgment in the plaintiff's favor, *id.* at 525, this Court later affirmed the district court's entry of judgment against all the defendants in the amount of the outstanding judgment, plus interest. *Sea-Land Services, Inc. v. Pepper Source*, 993 F.2d 1309, 1310 (7th Cir. 1993). Thus, this case makes clear that Spaulding Enterprises's outstanding judgment is an appropriate remedy for LM's alter ego claim.

While *Sea-Land* appears to settle that the amount in controversy requirement was satisfied with respect to Count 6 and accordingly, the five defendants named in that claim, Defendants argue that LM waived this argument by not raising it below. *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002) ("arguments not raised in the district court are waived on appeal"). LM, however, properly preserved this issue for appeal. Although LM's argument below in its Response in Opposition to Defendants' Motion to Dismiss did not include the ful-

some discussion of prior case law presented to this Court on appeal, LM did argue that its alter ego claim alleged that the named defendants must answer for the outstanding debt, which was $185,776, and that this satisfied the amount in controversy requirement. This was sufficient for LM to preserve this issue for presentation to this Court.

The other two arguments raised by Defendants with respect to LM's alter ego claim all concern the merits of LM's action to pierce the corporate veil. First, Defendants claim that damages must be capped by the amount of assets transferred by Spaulding Enterprises, not the $185,776, because it is only the alleged improper transfer of assets that "would likely produce an unjust or inequitable result," as required to pierce the corporate veil under Illinois law. *See Aps Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (A plaintiff, to prevail on an alter ego claim, must show, in part "that there exist circumstances such that an adherence to the fiction of separate corporate existence would likely produce an unjust or inequitable result."). Defendants also argue that because piercing the corporate veil is equitable in nature, given that it "is a matter of discretion, not of right," *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 737 (7th Cir. 2004) ("under Illinois law, piercing the corporate veil is an equitable remedy to be determined by the court"), the amount in controversy requirement is not met because it would go against fundamental principles of equity to allow a dispute over Spaulding Enterprises's limited assets of less than $20,000 result in a judgment against the defendants for $185,776. These are arguments on the merits, however, since they address the appropriate measure of

damages based on the substance of LM's claims. Such arguments are of no concern at this stage of the proceedings, since "[i]f . . . the case as a whole does not entail at the get-go a controversy exceeding $75,000, then the court must not resolve any aspect of it on the merits." *Johnson*, 361 F.3d at 993. Accordingly, the alter ego claim in Count 6 satisfied the amount in controversy requirement for Defendants Spaulding Enterprises, Spaulding Moving, Spaulding Trucking, and John and Jean Lalagos. Furthermore, because "[i]t is the *case*, rather than the *claim*, to which the $75,000 minimum applies," *id.* (emphasis in original), federal jurisdiction also extends to all of LM's other claims against these five defendants.

## B. Breach of Fiduciary Duty

Defendants Rally Capital Services, Samuels, and Rosetti were not named in LM's alter ego claim, and thus it is still necessary to determine whether the amount in controversy requirement has been satisfied for these three defendants. Two of these defendants, Rally Capital Services and Samuels, were the parties named in Count 1 of LM's complaint. In this count, LM claimed that Samuels violated the fiduciary duties it owed LM as the assignee/ trustee in the Assignment for the Benefit of Creditors, and that Rally Capital Services was also liable under the doctrine of Respondeat Superior. LM's claimed damages included the actual value of Spaulding Enterprises, which LM asserted would constitute at least the $150,000 in accounts receivable Spaulding Enterprises was listed as having in Samuels's February 8 letter.

LM contends that the district court erred in finding that Spaulding Enterprises had far less than $150,000 in assets

at the time of the Assignment for the Benefit of Creditors, thus bringing compensatory damages below the $75,000 threshold. LM first argues that it was improper for the district court to even engage in this analysis, contending that this amounted to weighing the evidence and a decision on the merits, something improper at this stage of the proceedings. This, however, is not the case. With the alter ego claim, for example, the parties did not dispute that the outstanding debt claimed by LM as damages was $185,776; Defendants only contested whether LM could obtain this full amount on the substance of its claim, which would, if decided, constitute an inappropriate decision on the merits prior to ascertaining federal jurisdiction. Here, however, Defendants contest the value of the assets claimed by LM as damages, not LM's likelihood of receiving the full value of those assets based on its substantive claim. LM's claim that Spaulding Enterprises's assets equaled $150,000 is a *jurisdictional* fact, and this Court has held that "a proponent of federal jurisdiction must, if material factual allegations are contested, prove those *jurisdictional* facts by a preponderance of the evidence." *Meridan Security Insurance Co.,* 441 F.3d at 543 (emphasis added).

LM also challenges, however, the district court's finding that the value of Spaulding Enterprises's assets was not $150,000. LM estimated Spaulding Enterprises's assets to be at least $150,000 on the basis of the February 8 letter it received from Samuels and Samuels's own deposition testimony, where he stated that the value of the accounts receivable were "approximately, . . . at the time of the assignment $150,000." In its motion to dismiss for lack of jurisdiction, however, Defendants brought forth evidence showing that at the time of the Assignment for the

Benefit of Creditors, Spaulding Enterprises had sold its accounts receivable to a bank. This evidence included declarations by John Lalagos and Samuels to this effect, as well as various bank statements and a copy of the Business Manager Agreement selling Spaulding Enterprises's accounts receivable. Although it does not appear that LM was trying to artfully plead itself into federal court by claiming damages exceeding $75,000, the district court did not abuse its discretion in finding that LM had not proven the jurisdictional fact concerning the value of Spaulding Enterprises's assets by a preponderance of the evidence.[2] *Id.* at 542-43.

The fact that Spaulding Enterprises's assets were less than $75,000, however, is not terminal to LM showing that the amount in controversy requirement is satisfied with respect to Samuels and Rally Capital Services, since LM also claimed punitive damages. *Cadek v. Great*

---

[2] We note that the original justification for allowing the amount in controversy claimed by the proponent of federal jurisdiction to be challenged was to ensure that the claim was "made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see Meridian Security Insurance Co.*, 441 F.3d at 539-41 (discussing early Supreme Court rulings in this area). Here, it appears that LM acted in good faith in claiming that Spaulding Enterprises's assets equaled $150,000, since it was relying on Samuels's own assertions in arriving at this figure. However, even though the controlling standard "that a party that chooses federal court set out the basis of federal jurisdiction and prove any contested factual allegation," *Meridian Security Insurance Co.*, 441 F.3d at 540, may be broader than necessary to satisfy the underlying rationale for the rule, the burden rested with LM in this case and is one it could not satisfy.

*Lakes Dragaway*, 58 F.3d 1209, 1211 (7th Cir. 1995) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount.") (quoting *Bell v. Preferred Life Society*, 320 U.S. 238, 240 (1943)). In cases such as this, where punitive damages are relied upon to satisfy the amount in controversy requirement, the court must first determine whether punitive damages are recoverable under state law. *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000) (quoting *Cadek,* 58 F.3d at 1211-12). If punitive damages are available, subject matter jurisdiction exists unless it is "legally certain" that the plaintiff will be unable to recover the requisite jurisdictional amount. *Id.*; *Meridian Security Insurance Co.,* 441 F.3d at 543.

The first part of this inquiry is satisfied, since Illinois courts have made clear that punitive damages are available for breaches of fiduciary duty. *See Franz v. Calaco Development Corp.*, 818 N.E.2d 357, 375 (Ill. App. Ct. 2004) ("Punitive damages are available as a matter of law for a breach of fiduciary duty"); *see also Martin v. Heinold Commodities*, 643 N.E.2d 734, 756-57 (Ill. 1994) (finding punitive damages available for a claim of intentional breach of fiduciary duty). As for the second part of this inquiry, this Court has noted that in cases where the amount in controversy is primarily composed of punitive damages, such claims should be closely scrutinized. *Anthony,* 75 F.3d at 315 ("When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, we should scrutinize that claim closely."). Even when carefully scrutinized, however, it cannot be said to a legal certainty that LM would be unable

to recover sufficient punitive damages to satisfy the amount in controversy requirement. Under Illinois law, "[p]unitive damages are permissible where a duty based on a relationship of trust is violated, the fraud is gross, or malice or willfulness are shown." *Martin,* 643 N.E.2d at 757 (quoting *In re Marriage of Pagano*, 607 N.E.2d 1242, 1250 (Ill. 1992), *superseded by statute as stated in Brush v. Gilsdorf*, 783 N.E.2d 77, 81-82 (Ill. App. Ct. 2002) (punitive damages no longer available for legal malpractice)). Here, the complaint alleged that the fiduciary duty, or "relationship of trust" between Samuels and LM was violated when Samuels failed to follow the assurances made in the February 8 letter. Moreover, there are numerous allegations in the complaint that these violations were done willfully. For example, despite representations in the February 8 letter that Samuels, as assignee, was in possession of all of Spaulding Enterprises's assets, the complaint alleges that Samuels in fact never held any of Spaulding Enterprises's assets. Furthermore, while the letter stated that Samuels would solicit higher bids than the $5,000 bid made by Spaulding Trucking, the complaint alleges that, contrary to the letter's assurances, no bids were solicited, no postings were made in the *Chicago Tribune*, and prior to the Assignment for the Benefit of Creditors, a Bill of Sale had already been entered into between Spaulding Enterprises and Spaulding Trucking. Based on these allegations, it was not inappropriate for LM to seek punitive damages.

It also cannot be said to a legal certainty that an award of punitive damages sufficient to satisfy the amount in controversy requirement in this case would violate due process. The Supreme Court has stated that punitive damage awards exceeding a single-digit ratio between

punitive and compensatory damages are unlikely to satisfy due process, and more specifically, that a 4-to-1 ratio "might be close to the line of constitutional impropriety." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Here, based on the district court's factual finding and Defendants' concession, compensatory damages could at most equal $20,000. Thus, in order for the amount in controversy requirement of $75,000.01 to be satisfied, it must be legally possible for LM to recover punitive damages exceeding $55,000, a ratio of 2.75-to-1. This ratio is not only a single-digit ratio, but also falls below the 4-to-1 threshold referenced by the Supreme Court. Although the Supreme Court has opined that when compensatory damages are substantial, due process may only permit a punitive damages award equaling compensatory damages, *id.*, given that LM's potential compensatory damages award is insufficient on its own to even satisfy the amount in controversy requirement, it can hardly be said that such an award is substantial. Accordingly, the amount in controversy requirement has been satisfied for Count 1 against Samuels and Rally Capital Services, and all claims against these two parties may properly be heard in federal court.[3]

---

[3] Counts 2 and 3 of LM's complaint also sought punitive damages related to a breach of fiduciary duty against John and Jean Lalagos (Counts 2 and 3) and Spaulding Trucking (Count 2). For the same reasons just discussed, we have no reason to believe that the amount in controversy requirement is not similarly satisfied for those counts. A detailed analysis for those counts, however, is unnecessary, because the amount in controversy requirement has already been satisfied for those defendants under LM's alter ego claim.

**C. Fraud and Conspiracy to Defraud Claims Against Rosetti**

As discussed above, because LM's alter ego claim and claims for punitive damages for a breach of fiduciary duty all exceed the amount in controversy requirement, all claims brought by LM against Rally Capital Services, Samuels, the three Spaulding entities, and John and Jean Lalagos are within the federal courts' jurisdiction. Laura Rosetti, however, the President of Spaulding Trucking, was only named as a defendant in Counts 7 and 8 for conspiracy to defraud and fraud. It is thus necessary to determine whether the amount in controversy requirement has been satisfied as it relates to Rosetti for these claims.

For Counts 7 and 8 against Rosetti, LM has failed to meet its burden of showing the amount in controversy requirement has been satisfied. We first note that LM's computation of damages for these claims has evolved over the course of the proceedings. In its complaint for Counts 7 and 8, LM requested damages "in an amount to be determined at trial," without specifying any particular dollar amount. The fact that LM's request for damages was general in nature is of no consequence so long as it was not legally impossible, based on the complaint as a whole, that LM could be awarded more than $75,000 in damages against Rosetti. *See RTC Commer. Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 452 (7th Cir. 1999). However, when LM submitted its Jurisdictional Status Report pursuant to the district court's order, LM stated, "[f]or the reasons set forth above, Plaintiff believes these damages would be at least $150,000." LM now argues that the "for the reasons set forth above" language was a reference to its assertion when dis-

cussing Counts 4, 5, and 6 (which sought the out-standing judgment of $185,776) "that this [outstanding] judgment was fraudulently avoided by the Defendants." Defendants contend, however, and we find more persua-sive, that the "for the reasons set forth above" phrase is a reference to LM's discussion in Counts 1, 2, and 3, of why it sought damages "of at least $150,000," which LM had calculated as being "the minimum value of the assets wrongfully transferred from Spaulding Enter-prises, Inc. to Spaulding Trucking, Inc." This latter inter-pretation could be seen as a case of the plaintiff pleading itself out of federal court, *see Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002), since LM's Jurisdictional Status Report indicates that it is basing its damages for Counts 7 and 8 on Spaulding Enterprises's assets at the time of the assets' transfer to Spaulding Trucking, an amount that was later determined to be at most $20,000.

In its Response to Defendants' Motion to Dismiss for lack of subject matter jurisdiction, however, LM assumed the position it now advances on appeal, that it was not legally impossible for Defendants to be held liable for $185,776 on Counts 7 and 8. But even if this Court were to disregard LM's Jurisdictional Status Report and rely solely on the position it first presented in response to the Motion to Dismiss, LM has still failed to show that the outstanding debt is an available remedy for its two fraud-related claims against Rosetti. The cases LM relies upon to show that the value of an outstanding judgment is an available remedy for common law fraud and conspiracy to defraud claims do not support that proposition. LM first points to *Sea-Land Services, Inc. v. The Pepper Source*, 941 F.2d 519 (7th Cir. 1991), the same case relied upon to show that the amount in controversy requirement was satisfied with respect to LM's alter ego claim. LM argues

that because one of the required elements for piercing the corporate veil is showing that "adherence to the fiction of separate corporate existence would *sanction a fraud* or promote injustice," *id.* at 520 (quoting *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565 569-70 (7th Cir. 1985) (emphasis added), a plaintiff bringing independent claims of fraud or conspiracy to defraud can recover the outstanding debt just as it would for an alter ego claim. There would be no reason, however, for Illinois to have a separate cause of action for piercing the corporate veil if plaintiffs could recover outstanding debts owed by a corporation from other entities through a simple fraud claim.

Similarly unavailing is LM's reliance upon *Lincoln National Life Ins. Co. v. Nicklau, Inc.*, No. 98 C 2453, 2000 U.S. Dist. LEXIS 6936 (N.D. Ill. May 17, 2000). As an unpublished opinion from the Northern District of Illinois, this case of course has no precedential value before this Court. Moreover, even if this Court were to use *Lincoln National* as persuasive authority, it does not stand for the proposition LM asserts. The facts of *Lincoln National* are very similar to those in this case. There, the plaintiff had obtained an earlier judgment against a restaurant named Pasteur. This first restaurant was dissolved, and the wife of one of the two brothers who co-owned this first restaurant then opened a new restaurant under the same name at a new location, with the two brothers working as employees. *Id.* at *2-5. The plaintiff sued the second Pasteur restaurant and the two brothers for the outstanding judgment under claims for successor liability and intentional and constructive fraud, among others. *Id.* at *1-2. Although, as noted by LM, the district court did find that "a fraudulent transfer

occurred," *id.* at *18, this does not support LM's assertion that it can obtain the outstanding debt it is owed from Rosetti through claims for fraud and conspiracy to defraud. The district court's discussion of fraudulent transfer in *Lincoln National* was done within the context of the plaintiff's successor liability claim, not its claims for intentional and constructive fraud. Moreover, the district court made clear in its judgment that only the second Pasteur *corporation* was liable for the outstanding debt, not the two brothers individually named as defendants. *Id.* at *19-21. Accordingly, *Lincoln National* does not support LM's assertion that Rosetti can be found liable in the amount of the outstanding judgment for fraud or conspiracy to defraud.

Instead, as Defendants point out, damage awards for fraud are based upon the plaintiff's loss (rather than the defendant's gain), *Martin v. Allstate Ins. Co.,* 416 N.E.2d 347, 352 (Ill. App. Ct. 1981), and as a general matter, provide damages of "such an amount as will compensate the plaintiff for the loss occasioned by the fraud or the amount which plaintiff is actually out of pocket by reason of the transaction." *Brown v. Broadway Perryville Lumber Co.*, 508 N.E.2d 1170, 1176 (Ill. App. Ct. 1987). Based on LM's complaint and arguments to this Court, "LM's fraud claims center on the allegations that a new roll-over company, Spaulding Trucking, was created to obtain all of the assets of Spaulding Enterprises, and thereby continue Spaulding Enterprises's income producing business operations." Appellant's Reply Br. at 11. Accordingly, LM's "loss occasioned by the fraud" was the value of Spaulding Enterprises's assets that were fraudulently transferred pursuant to the Assignment for the Benefit of Creditors, which for reasons discussed, could

not have exceeded $20,000. Despite LM's summary asser-
tion that it is legally possible for it to recover the out-
standing judgment as the remedy for these claims, LM
has been unable to point to any case where a plaintiff
recovered an outstanding judgment through a common
law fraud or conspiracy to defraud claim. While such a
remedy may exist for a claim of fraudulent conveyance
brought under the Uniform Fraudulent Transfer Act, 740
ILL. COMP. STAT. 160/8, or, as discussed, through an alter
ego or successor liability cause of action, those are not the
claims raised in Counts 7 and 8.[4] Accordingly, the amount
in controversy requirement has not been satisfied as it
relates to Rosetti, and federal jurisdiction does not exist
over the claims against her.[5] Federal jurisdiction does

---

[4] We note that our damages discussion with respect to the
fraud counts against Rosetti is distinct from our damages
discussion concerning LM's alter ego claim. Defendants'
arguments for the alter ego claim concerned the likelihood of
LM prevailing on the merits of its claim and how a district
court should exercise its equitable discretion in awarding
damages. Both of these arguments spoke to the merits of LM's
claim and did not reflect that it was "legally certain" the
recovery would be for less than $75,000. In contrast, for the
fraud claims against Rosetti, our discussion does not address
the likelihood of LM prevailing on the Counts, but instead
focuses upon the maximum amount of damages LM could
recover under Illinois law and whether there is any legal
precedent for an outstanding judgment being awarded on a
common law fraud or conspiracy to defraud claim.

[5] We also note that supplemental jurisdiction could not be
exercised over LM's claims against Rosetti, because doing so
would require that she be joined as a defendant pursuant to

(continued...)

exist, however, for Counts 7 and 8 against all other defendants, since the amount in controversy requirement has already been satisfied for those defendants for reasons already discussed.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of Defendants' Motion to Dismiss as it relates to Counts 7 and 8 against Rosetti, and REVERSE the Motion to Dismiss with respect to all other claims against all other defendants. Accordingly, we REMAND this matter to the district court with instructions to reinstate LM's Complaint consistent with this opinion. Circuit Rule 36 will apply on remand.

---

[5] (...continued)
FED. R. CIV. P. 20, something explicitly forbidden by 28 U.S.C. § 1367(b) when doing so "would be inconsistent with" the requirements for diversity jurisdiction under 28 U.S.C. § 1332, which includes the amount in controversy requirement. *See Exxon Mobil Corp.,* 545 U.S. at 564-66.